18047

W. T. BURRELL, Appellant, v. W. L. KIRKLAND and Joe Shirley, Respondents

(130 S. E. (2d) 470)

*G. Ross Anderson, Jr., Esq.,* of Anderson, *for Appellant,*

*Messrs. Watkins, Vandiver, Freeman & Kirven* and *Allen & Jones*, of Anderson, *for Respondents,*

April 8, 1963.

PER CURIAM.

The appellant in this action sought to enjoin defendants from obstructing a road across a tract of land owned by the respondent Kirkland, contending (1) that it was a public road; (2) that he had a prescriptive right to use it, and (3) that he was an abutting landowner and had an easement therein. The respondents, on the other hand, sought to enjoin appellant's entry and trespass upon said lands. The appeal here is from an order of the circuit court denying the relief sought by the appellant and granting that sought by the respondents.

We have carefully considered the entire record and all of appellant's numerous exceptions, which we find to be without merit. The clear weight of the evidence fully supports the findings of fact by the circuit judge and we are satisfied that his order, which will be *reported herewith,* correctly disposed of all issues before him in this case.

The decree of the circuit judge follows:

In this action, the Plaintiff seeks an injunction against the Defendants which would require them to permit the Plaintiff passage through a tract owned by the Defendant W. L. Kirkland lying on the easterly side of the Clemson Highway inside the Town of Pendleton. The Plaintiff claims a right to travel a public roadway which he asserts runs from the Clemson Highway to a public street in a textile mill village lying further east.

The Defendants counterclaimed, seeking to restrain the Plaintiff from alleged continuous trespass and asking damages for the trespass to date.

The action was referred to the· Honorable Ernest B. Castles, who took testimony and made his report dated May

30, 1961, in which he recommends the injunction sought by the Plaintiff. The report is silent as to the counterclaim except for the recommendation that no damages be awarded either the Plaintiff or the Defendants. No exception is taken by the Defendants with regard to question of damages; hence, the Referee's report as to damages is confirmed.

Defendants have taken exceptions to the findings and conclusions of the Referee in support of his recommendation that Plaintiff's injunction be granted, and on a careful study of the record I am convinced that they must be sustained.

The road that Plaintiff claims in this case would have to cross three (3) tracts of land; the tract of the Defendant Kirkland containing about twenty-five (25) acres; lands of the textile mill known as the Blue Ridge Yarn Mill; and an intervening strip belonging to A. R. Brown, the father-in-law of the Plaintiff. None of the travel claimed by the Plaintiff touched his own property, a 300-foot square lot, deeded to him in 1958 by his father-in-law, at a point quite some distance from the asserted public way. The evidence is undisputed that the Plaintiff built his home upon the lot conveyed to him by his father-in-law and ran a driveway several hundred feet through property of A. R. Brown in order to reach the Kirkland property and to enter a roadway going to the Clemson Highway, which the Defendants contend was a private "field" road serving only the Kirkland property and terminating at the fence along its rear.

The evidence is also undisputed that prior to the commencement of this action, Anderson County furnished the Plaintiff an improved roadway running to his front door and connecting with Major Street, a public thoroughfare, in the mill village. In absence of a showing of some special damage, there can be no private suit for injunction or damages for the obstruction of a public road. Remedy for this is by indictment.

*Brown v. Hendricks,* 211 S. C. 395, 45 S. E. (2d) 603; *Leitzsey v. Fellers,* 181 S. C. 401, 187 S. E. 740. As to any

claim for special damages apart from his claim as being an abutting owner, Mr. Burrell himself concedes that he is not specially damaged. The following appears in the transcript at page 51 :

"Q. Mr. Burrell, you say the county has extended a road out to your front door?

"A. That is right.

"Q. An Extension of Major or Pond Street?

"A. Yes, sir.

"Q. So you have the same access to public ways as all the people at the mill village?

"A. That is right."

But the Plaintiff claims to be an abutting owner within the meaning of the rule that gives a property owner an easement in a street upon which his property abuts, which is special to him, and should be protected, and cites in support of this claim *Bethel Methodist Church v. City of Greenville,* 211 S. C. 442, 45 S. E. (2d) 841. The point of this case, however, is not that a lot separated by intervening property from the asserted public way can be considered "abutting" but that the property need not directly abut the portion of the street being vacated. In the instant case, the property of the Plaintiff touches no point of the asserted public way but, in fact, it was necessary for him to travel through neighboring property some distance with a road of his own before reaching any point of the asserted way. I cannot see that he stands in any different position from others in the mill village and surrounding community and I conclude, therefore, that he is not specially damaged and, hence, not entitled to bring this action.

Apart from this conclusion, I hold that the Plaintiff would have no right to enter the property of the Defendant Kirkland as he says he does. He cannot relocate a public way by prescription to suit his convenience, even if one should, in fact, exist. The Plaintiff himself testified that the gap in the fence between the Brown property

and the Kirkland property through which he reached the Kirkland property is "* * * the right from where the old gap was * * *." See Transcript pages 124-126. This was a fence put up by A. R. Brown about three (3) years ago according to the testimony of Brown who acknowledged that there was a wire fence there when he purchased the property in 1946 and that this was the second fence he had put up since then, claiming in both cases to have left a gap at the end of the field road on the Kirkland property. See Transcript page 46.

It was following this testimony that photographs taken were offered showing a solid fence at the end of the road on the Kirkland property, the testimony being that the pictures were taken by J. D. Smith in company with J. C. Sloan in the summer of 1958 when the Plaintiff's property was partly graded and before his house was built. Transcript page 60.

It was in reply that the Plaintiff claimed the existence of an opening to the right of the photographed area (which encompasses the terminus of the then existing roadway at the fence).

Hence, it necessarily follows that if there was a gap to the right of the photographed area and, as Burrell put it, to the right from "* * * where the old gap was * * *" then the Plaintiff has located a new route of entry upon the Kirkland property which, by the testimony, has existed some three (3) years only. This he cannot do.

The field road through the Kirkland property is a road obviously used for some vehicular traffic. There is no visible evidence of any vehicular traffic past the rear of the Kirkland property.

I think it must be squarely acknowledged that if a road for vehicular traffic is claimed, one must be prepared to say that such a road not only runs through the Kirkland property, but through the pasture of Brown and the pasture of the Mill. While I am

satisfied that there was some use of this route by pedestrians, most of whom were going to or from their work in the Mill, I cannot conclude that there was vehicular traffic through the pastures of Brown and the Mill sufficient to create a way by prescription. This being so, the Plaintiff cannot use the property of the Defendant Kirkland for vehicular passage even though it has been made suitable for that purpose by private use. Whether one claiming a way over another's land by prescription is entitled to a foot-way, horse-way, or carriage-way, depends upon the mode the property has customarily been used. Minor on Real Property, Vol. II, Section 1060. See also Tiffany on The Law of Real Property, Vol. I, Section 322.

"If the adverse use on which the prescriptive claim to a way is based was for one particular purpose only, as in the case of a way used by foot passage only, or for the carriage of timber only, this is not sufficient to support a claim to a right of way for all purposes." Citing cases.

Hence, in the case at hand, if it should be determined that a public foot-path existed by prescription, it could not in any case, be expanded in width to permit the vehicular traffic for which Plaintiff contends.

While the Plaintiff seeks to show a roadway for vehicular traffic, I must add in conclusion that had he sought to show only a public footpath, I would be unable to sustain a finding of this under the evidence before me. The record in this case leaves one with the conviction that the principal use of this "shortcut" to the Clemson Highway was by Mill employees going to and from their work and homes in the Village. This use was surely permissive as against the Mill. If there was not a public pathway through the Mill's pasture, there was not a public pathway through the Kirkland property. Both termini of a public way must be in a public highway or public place in order for the road in question to be a public road. See *Fanning v. Stroman,* 113 S. C. 495, 101 S. E. 861.

Even if use by the Mill's employees of the Mill ■ pasture as a way to get to the Clemson Highway should not be deemed permissive, such use still would not constitute the pasture a public way. Our Court has held that the route must be used by the public generally and not by particular individuals. In other words, the use must not be by a limited community or class of people. *Craft v. Seaboard Airline Railway,* 92 S. C. 291, 75 S. E. 501.

For the foregoing reasons, the restraining Order previously entered against the Defendants is hereby dissolved and the Plaintiff is hereby enjoined from any further trespass upon the property of the Defendant Kirkland.

It is further ordered that the Plaintiff pay the costs of this Action, together with the sum of $100.00 Dollars to the Honorable Ernest B. Castles for his services as Special Referee.