83 N.J. Super. 373 (1964)
200 A.2d 126
MARY FELICI, PLAINTIFF-APPELLANT,
v.
PENNSYLVANIA-READING SEASHORE LINES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1964.
Decided April 30, 1964.
*374 Before Judges GAULKIN, LEWIS and FULOP.
Mr. Anthony M. Bezich argued the cause for appellant.
Mr. Blaine E. Capehart argued the cause for respondent (Messrs. Capehart & Scatchard, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
Mary Felici, plaintiff in a tort action, appeals from a judgment of the Superior Court, Law Division, dismissing her complaint at the close of her evidence on the issue of liability.
Defendant Pennsylvania-Reading Seashore Lines operates a passenger and freight railroad between Camden and Atlantic City, and a double line of its tracks pass through the Borough of Collingswood. Trains proceeding from Camden to seashore points on the westerly tracks are said to be traveling southbound, and northbound when proceeding in the opposite direction on the easterly tracks.
Plaintiff, age 42, lived in the Wayne Garden Apartments in Collingswood. The main entrance to the apartments is on *375 Browning Road, an improved east-west highway which crosses the railroad tracks. That crossing is protected by automatic gates, flasher lights and bells. The rear area of several apartment units extends from Browning Road north along the westerly railroad tracks to Wayne Terrace (West), a street which runs parallel to Browning Road and dead-ends near the bed of the railroad. On the easterly side of the railroad, paralleling and adjacent to its right-of-way, is a public highway known as Atlantic Avenue. Wayne Terrace (East), approximately 900 feet north of and parallel to Browning Road, dead-ends at Atlantic Avenue.
On June 16, 1961 the weather was clear and, at about 6:15 P.M., plaintiff, in returning home from her employment in Philadelphia, was discharged from a Public Service bus at Atlantic Avenue and Wayne Terrace. To reach her apartment on the other side of the tracks, she proceeded along a path to and up an embankment to the surface of the railroad bed which is approximately four or five feet above street level. When she reached a large log imbedded in the side of the incline plaintiff stopped, "took a foothold there" and looked both to the left and to the right without observing an oncoming train. She continued to the crest of the embankment and across the first (northbound) set of tracks. Her testimony was, "I concentrated on my footing and I didn't look up until I came to the separation between the two sets of tracks." Plaintiff was standing on the protruding end of a railroad tie of the easterly track when, for the first time, she noticed an approaching southbound train. Then, running forward, she cleared both rails of the westerly tracks before she was struck and thrown to the ground, apparently by a projecting portion of the engine.
The allegations in the complaint that the operators of defendant's train, after observing plaintiff's attempt to cross the tracks, did not "apply brakes" and "failed to ring a bell or blow a whistle or give proper warning" of the approaching train were supported only by plaintiff's testimony that she did not hear any such warning signals.
*376 The diesel locomotive of the train was manned by a crew of two  Robert L. Morris and his brother, David Morris. In substance, their testimony was that the speed of the train after crossing the Crescent Boulevard bridge (estimated to be 700 feet north of Wayne Terrace) was 60 to 70 miles per hour. When plaintiff was observed walking up the embankment to the railroad tracks toward the northbound rails, the fireman sounded the alarm whistle and continued to give short successive warning blasts.
It is contended on appeal that (1) the course of travel by plaintiff across the railroad tracks was on a right-of-way which had accrued to the public by prescription and, therefore, the evidence was sufficient to raise a jury question as to defendant's negligence, (2) R.S. 48:12-152, prohibiting recovery of damages resulting from certain types of trespass on railroad tracks, is here inapplicable and, in any event, defendant was guilty of wanton misconduct, and (3) plaintiff was not guilty of contributory negligence as a matter of law.

I.
In the vicinity of the place where the accident occurred there is no kind of construction, grading or physical condition over or upon the railroad tracks to indicate any apparent or intended use as a public crossing. There is no evidence in the record of any dedicated right-of-way. Plaintiff and witnesses produced on her behalf testified that they frequently crossed the train tracks by way of a "short cut" from the Wayne Terrace apartment area to Atlantic Avenue and Wayne Terrace (on the opposite side of the railroad tracks), or vice versa, although there is no protected grade crossing at that location. There was testimony, however, concerning a footpath on each side of the tracks leading to the elevated bed of the railroad. It is urged that the existence and use of such pedestrian paths incident to crossing the tracks constituted an implied right-of-way or easement by prescription.
*377 Numerous decisions and text writers have dealt with the doctrine of prescription, its history, development and application. See generally Plaza v. Flak, 7 N.J. 215 (1951), and the authorities therein assembled. To invoke the doctrine there must be a user "that is adverse, hostile, continuous, uninterrupted, visible and notorious." Id. 7 N.J., at p. 220. It is rudimentary that the prescriptive period is 20 years and that the burden of proof by a preponderance of the evidence remains upon the party claiming such a right. The user in the instant case was obviously permissive and not under any claim of right and was therefore not adverse. Note, Brooks v. Pennsylvania R.R. Co., 92 N.J.L. 394, 397 (E. & A. 1918).
The entire lack of proof as to any adverse user for the required prescriptive time is an insuperable weakness in the theory of recovery advanced by plaintiff. She had lived in Collingswood for approximately a year prior to the accident. During that limited residence in the borough her utilization of the paths in question was not regular but rather a fair-weather type of use. When interrogated on the subject, she testified:
"Well, yes, I also would cross over at the regular crossing at Browning Road if the weather was bad, rainy, or any kind of inclement weather. I didn't go over the track because it was puddles and it was very dangerous there."
Moreover, it is implicit from the testimony of plaintiff's neighborhood witnesses that their occasional or frequent crossings of the railroad tracks in the proximity of Wayne Terrace were for their own convenience and were not intended to establish a public crossing.

II.
Absent a prescriptive right to traverse the defendant's property, the question is raised as to whether plaintiff is barred from relief by virtue of R.S. 48:12-152 which provides:
*378 "It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway.
Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages from the company owning or operating the railroad. This section shall not apply to the crossing of a railroad by a person at any lawful public or private crossing." (Emphasis supplied)
It is urged by plaintiff that she did not walk along the tracks but was crossing them and, therefore, her action was not within the literal proscription of the statute. She contends that the words walk along and walking on must be given the same meaning and "to walk along a railroad longitudinally, or to stand or play on a railroad, and thus to tarry there, affords a logical reason to legislate differently than as against persons who do nothing more than to cross its narrow width." Reliance is placed upon the obiter dictum of Justice Garrison in Furey v. New York C. & H.R.R.R. Co., 67 N.J.L. 270, 278 (E. & A. 1902):
"The act entitled `An act to prevent accidents on railroads' (Pamph. L. 1869, p. 806) [Gen. Stat., p. 2680, § 178], is not deemed to be applicable to the present case. The plaintiff was crossing the tracks of the defendant. He was neither walking on them nor standing nor playing on them, which are the conditions covered by that statute."
That case is an authority only for what it actually decided in the light of the particular facts that were in controversy. There, the accident occurred on the railroad premises under a shed, where freight cars were loaded and unloaded, by the coming together of two cars between which the injured plaintiff was about to pass. The case turned on plaintiff's failure to establish a breach of duty by the railroad and on plaintiff's contributory negligence.
The afore-quoted statutory enactment, read in its entirety, does not seem to us to be confined to persons walking "longitudinally" along the tracks. Such a narrow construction is *379 negated by the proviso which excludes persons crossing at any lawful public or private crossing. "The effect of the statute is to absolve a railroad company from a duty to a trespasser." Egan v. Erie R. Co., 29 N.J. 243, 248 (1959). Cf. Kowaleski v. Pennsylvania R. Co., 103 F.2d 827 (3 Cir. 1939), cert. denied 308 U.S. 556, 60 S.Ct. 95, 84 L.Ed. 467 (1939). We find it unnecessary for the purposes of this opinion to comment further upon the legislative language of the statute.
There is no evidence from which it can be inferred that the injuries to plaintiff were attributable to willful or wanton conduct on the part of defendant.

III.
The trial judge, in his decision on defendant's motion for dismissal, said, "The evidence in this case is not debatable. Rather it leads to one inescapable conclusion, that plaintiff was guilty of contributory negligence as a matter of law." We agree. When plaintiff discovered her perilous situation, she had not completely crossed the railroad ties of the northbound tracks. She was in a position of safety and could have avoided all danger by remaining where she was, stepping back or retreating. Instead, she pressed forward, chancing her running gait against the speed of the oncoming locomotive. She chose not to use a nearby protected crossing and demonstrated heedless disregard for her own safety in walking over the railroad tracks at an unprotected locale and in the manner she described. There is a difference between being overtaken by an unforeseen peril and being overtaken by a peril recklessly incurred. Plaintiff took unnecessary chances and, thus, cannot be held free from contributory negligence. See West Jersey R.R. Co. v. Ewan, 55 N.J.L. 574 (E. & A. 1893); Schwanewede v. North Hudson Ry. Co., 67 N.J.L. 449 (Sup. Ct. 1902); cf. Pangborn v. Central Railroad Co. of N.J., 18 N.J. 84 (1955). The proofs in the record before us are such that fair-minded men could not have honestly differed in their conclusions.
Judgment affirmed.