411 P.2d 782 (1966)
Kenneth SHIVELY, Raymond Bearden and Ellis Bearden, Plaintiffs in Error,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF EAGLE, Defendants in Error.
No. 21054.
Supreme Court of Colorado, In Department.
March 7, 1966.
Robert L. McDougal, Denver, for plaintiffs in error.
Eugene D. Lorig, Eagle, J. Fred Schneider, Ronald Lee Cooke, Denver, for defendants in error.
DAY, Justice.
This writ of error challenges the validity and correctness of a decree of the trial court which ruled that a rugged mountain trial or roadway through the property of *783 the plaintiffs in error is a public road as defined in C.R.S.1963, 120-1-1. We will refer to them as defendantsas they appeared in the trial courtor by name; Eagle County will be referred to as the County, and the County Commissioners as the Commissioners.
Involved herein is what one of the witnesses described as "a typical country road." It has a nameSquaw Creek Road. It is well defined and can be traversed at least part way by jeep in modern times; although previously it had been used by wagons, lumber trucks and by hunters and fishermen on horseback or on foot. It extends up the mountain terrain in a southerly direction from Federal Highway No. 6 in Eagle County generally along a mountain stream, Squaw Creek. The road passes adjacent to the Beardens' property which is north of Shively's. It then cuts through the Shively property which borders on the White River National Forest approximately four miles up the road from the highway. Shively and the Beardens traverse it to their respective properties. Beyond it affords access to two private holdings within the National Forest and to the forest itself.
Several years prior to the events which precipitated the present litigation, the road had deteriorated to such an extent that those using the road were, as a result, unwittingly trespassing and poaching upon Shively's property. Shively, therefore, with the assistance of one of the Beardens, erected a gate on the road at a point between the Beardens' and Shively's properties known as the Lew Fenno turnoff. This was done with notice to and permission of the Commissioners; although there was no formal resolution of the Commissioners to this effect introduced into evidence. Later, another gate was constructed at the north border of the Shively property. There is testimony that one of the Commissioners permitted the locking of these gates as the fall season approached so as to insure better control of access to the forest area.
Shortly thereafter, Shively took the position that no thoroughfare had been established on that portion of the road extending through his property; he therefore denied the public the right to pass through the gates he had erected. The Commissioners, on being apprised of this, instituted suit against Shively and the Beardens. In their complaint they sought a decree to quiet title to the road in the county and also prayed for a permanent injunction restraining Shively and the Beardens from blocking the road and denying the public use of and access through the road.
A trial was had to the court. At the conclusion of the suit the County abandoned its request for a quiet title decree and asked for and obtained a declaration that the roadway is a public road. The injunction as prayed for was also issued. The trial court in its findings of fact and conclusions of law found the road to be a public way and entered in the decree a description of the roadway as platted by a survey. It also issued a permanent injunction restraining the defendants from maintaining the locked gates and from barring the public access through the Shively property.
In their argument for reversal Shively and the Beardens assert: (1) that the evidence does not support the finding that a public road had been established; (2) that if there is such evidence it is clear that the County had abandoned the road; (3) that the judgment of the court is at variance with the issues framed by the pleadings, and (4) that Shively and the Beardens should have been granted a jury trial as they had demanded.
We take up first the matter of whether the evidence supports the court's decree. It is the contention of Shively that the use of the roadway was merely permissive; but even if adverse, it was not for a sufficient period of time because the elements had so changed the course of the roadeven as late as 1959 and 1960that the path followed by the public is different from and not the same as the course the road had previously taken.
We have read the entire record and find that it amply supports the findings of *784 the trial court and also the conclusion that a public road had been established. There were witnesses who were able to testify as to their own use of the road and also of the use by others as early as 1920, extending continuously up to the time that the gates were first erected. Hunters, picknickers, and fishermen who entered the National Forest to the north gained access thereto over the road. Shively admitted that he annually observed hunters using the road and making their way into the forest. There was testimony that at various times the road was used for the hauling of lettuce grown in the forest and that lumber had been transported over it from a sawmill which had once been in operation there; and also that lumber had been cut and removed from the forest under Forest Service permits. The County, at times, had done maintenance work on the road when demands therefor justified it, although not in recent years. Moreover, there was also the fact that Shively had recognized the public nature of the roadway and had sought permission of the Commissioners to maintain a gate; ostensibly to protect his own property and not to deny the public use of the road.
The statute relied upon by the court whereby it declared the roadway now to be public, C.R.S.1963, 120-1-1(3), reads as follows:
"The following are hereby declared to be public highways:
* * * * * *
"(3) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years."
In the record no showing was made by Shively or those who testified in his behalf that the use made by persons of the road was not under claim of right to do so. When testing the sufficiency of the evidence to support a finding of title by prescription the party asserting the same is aided by a presumption that the character of the use is adverse where such use is shown to have been made for a prescribed period of time. Martino v. Fleenor, 148 Colo. 136, 365 P.2d 247; Trueblood v. Pierce, 116 Colo. 221, 179 P.2d 671, 171 A.L.R. 1270. The rule is no different with respect to presumptive rights gained by the public under the statute herein cited.
With reference to the matter of changes in the course of the road, most of these permutations were not on the portion through the Shively property, and if some changes were within the Shively boundaries they were clearly not of such a character as to deny the public a right to use the road as it presently exists. In 39 C.J.S. Highways § 6, we find the applicable rule set forth as follows:
"The public cannot acquire a prescriptive right to pass over a tract of land generally; in order to create a highway by prescription the user must be confined to a definite and specific line or way. This is especially true where the locus in quo consists of wild or uninclosed lands. However, it is not indispensable that there shall be no deviation from a direct line of travel or that all vehicles that traverse the road shall follow exactly the same route or traverse the road in exactly the same rut. Slight variations in the line of travel are not fatal; it is sufficient that the travel has been confined to substantially the same line; * *." (Emphasis supplied)
The evidence in this case falls within the ambit of the aforementioned statement. The final decree of the court incorporates a description of the disputed portion of the road to which no specific objection has been raised; we therefore presume it to be as substantially as possible along the line traveled by those persons upon whose use this action was based, and we also consider the change in the terrain wrought by nature.
On the question of the abandonment of the roadShively and the Beardens rely upon the permission granted by the Commissioners allowing them to erect the gates *785 and upon the County's failure to maintain the road. Abandonment is a question of fact which in this case was resolved against the Beardens and Shively by the trier thereof. The Commissioners took no formal action in any meeting called for that purpose to abandon the highway. There was no showing of non-use by the public; and, in fact, the public continued to use it until barred by the locked gates which precipitated the instant legal action by the Commissioners. The original permission granted for the erection and locking of the gates was said to be for the purpose of helping to protect the Shively property; it cannot therefore be deduced from such evidence that either the Commissioners or Shively himself at that time intended to close off the roadway. The Commissioners, upon being advised that an attempt was being made to bar the public, acted promptly.
Because much ado was made of the fact that the Commissioners instituted the quiet title action and that the decree of the court merely declared the roadway to be a public thoroughfare, we make brief comment on this assignment of error. True, there was a variance between the pleadings and the position finally taken by the County and the decree subsequently entered by the court. However, R.C.P.Colo. 15(b), permits the action taken by the court; it also renders the relief granted as appropriate and valid. The rule states:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"
The parties at bar tried the law suit on the question of adverse use by the public: one side seeking to establish the continuous and uninterrupted prescribed use of the road in question and the other side claiming that it was non-continuous, permissive and abandoned. With acquiescence in a trial so conducted, Shively and the Beardens are in no position to complain of the failure to amend the pleadings.
Finally, on the question of the right to a trial by jury, we point out that the litigation was directed to the equity side of the court for which a jury may be called in the discretion of the court for an advisory opinion. Notwithstanding such procedure, and assuming that a jury could be demanded to try some of the factual issues in the case, suffice it to say that there was a waiver thereof by the failure of Shively and the Beardens to make demand therefor as prescribed in R.C.P.Colo. 38.
The judgment is affirmed.
SUTTON, C. J., and FRANTZ, J., concur.