James W. LOFLAND and Ruth M. Lofland, Robert B. Fitzgerald and June L. Fitzgerald, Hayward Robinson, and James M. Morgan, Plaintiffs,

v.

William L. TRUITT and Hilda T. Truitt, Defendants.

Court of Chancery of Delaware.

New Castle.

Nov. 14, 1969.

Theodore F. Sandstrom, of Killoran & Van Brunt, Wilmington, for plaintiffs.

Jackson W. Raysor, of Tunnell & Raysor, Georgetown, for defendants.

MARVEL, Vice Chancellor:

Defendants have built a wire and post fence across what plaintiffs claim is their established means of access to their properties,[1] and, after trial, plaintiffs ask for a permanent injunction against such interference by defendants with their alleged rights of ingress and egress to their separate lots over the road in question. Plaintiffs' application is based on two arguments. They contend first that an easement for such use has been established by prescription. Alternatively, they take the position that if an easement has not been shown to have been established, that the road in question long ago became a public right of way by reason of an implied dedication to such use by its former owners, followed by user on the part of the public.

The road in question, all of which until the last four or five years was a typical dirt woods road with grass and shubbery growing up between its wheel paths, has been scraped by machinery at its eastern end in recent years, and were it not for the post and wire barrier constructed by defendants across the woods road before it passes into the property of the Lofland defendants, persons seeking to drive by motor car from the nearest paved road, namely County Road #214, could safely reach all of the plaintiffs' lots, hereinafter more fully identified, and proceed by a recently established connecting dirt road, hereinafter discussed, to another County Road, namely

---

1. See plaintiff's exhibit #9 appended.

#224. However, the rest of the woods road here in issue, as it runs west to County Road #38, is at present overgrown by branches and covered with undergrowth. On the occasion of a recent inspection of such road by the Court it appeared to be virtually impassable for the conventional motor-driven passenger vehicle after passing the area of plaintiffs' lots and their present means of access to such lots.

Plaintiffs are owners of separate small lots of land of an acre or two in size situate in Cedar Creek Hundred, Sussex County, Delaware. Said lots lie north of the old woods road above referred to and run down to the southern shore of Cubbage Pond.[2] They were recently purchased either from Arthur Sackett or his successor in title, Mr. Fitzgerald, Mr. Sackett having inherited the lands in question from his father in 1928. The Loflands purchased their one and one half acre lot from Mr. Sackett in August 1964, the Fitzgeralds having purchased a substantial tract of some 145 acres from the same seller in January, 1965. Most of the Fitzgeralds' lands lie south of the woods road in question, however, a portion of it lies north of the woods road and runs down to the mill pond east of the Robinson property. The Morgan lot of two and three quarter acres had been purchased from Mr. Sackett in October, 1964. Finally, Mr. Robinson purchased his lot of approximately one acre from the Fitzgeralds in May, 1967, such lot having been, as noted above, a part of the large tract purchased by the Fitzgeralds from Mr. Sackett in 1965.

The defendants William L. Truitt and Hilda T. Truitt purchased their three acre lot on May 10, 1968 from George Metz, who had purchased such property in 1954 from the Milford Rotary Club. This lot lies directly east of that of the Loflands and extends to County Road #214. This tract had been used by the Milford Rotary Club and by Mr. Metz mainly for recreational purposes, such as camping, skating, hunting and fishing on the part of Boy Scouts and others, as well as for washing automobiles, although during recent years unauthorized campers, swimmers, and persons seeking to dispose of trash and garbage have also used the lot for the purposes stated.

The question here to be decided concerns the respective rights of the present litigants in the woods road in dispute which runs from County Road #214 in a westerly direction into plaintiffs' lots by way of defendants' lands. After proceeding along the north side of plaintiffs' lots and through lands of Onis Carpenter, such road terminates at County Road #38 on the westerly side of Cubbage Pond and its headwaters. The distance between County Road #214 and County Road #38 along the woods road in question is approximately a mile and a half.

Access afforded plaintiffs to County Road #214 (before it was blocked by the defendants in the summer of 1968) was by way of the woods road through defendants' land hereinabove described. Now that such road is blocked, temporary access to his fellow plaintiffs' lots is now being provided first by the plaintiff Robert Fitzgerald by means of a recently installed right of way which runs into lands of Mr. Robinson. Mr. Robinson runs a trailer park along such road and has in turn given plaintiffs permission to proceed from the Fitzgerald property through his own property, which borders on County Road #224.

Plaintiffs' deeds contain no express reference to any right on their part to use the woods road in dispute, nor is there any reference thereto in defendants' deed. However, the Morgan, Lofland and Robinson deeds do refer to the woods road as an existing landmark and it appears on a 1954 United States Geological map[3] in evidence.

2. Referred to locally at present as Brittingham's Pond.

3. Such map does not indicate whether such road is private or public.

The deeds of defendants' predecessors in title, on the other hand, do not disclose that such lands are subject to an easement in favor of plaintiffs' predecessors in title. Nonetheless, plaintiffs claim rights in such road based on one or the other of the two inconsistent theories referred to earlier in this opinion.

The former owner of plaintiffs' lands, Arthur Sackett, testified that the road in question had been in existence prior and during the years he owned the lands presently owned by defendants, and there is no doubt but that since their purchases made from 1964 through 1967 plaintiffs have made substantial use of the road in question in order to reach their respective lots for periodic visits. In short, plaintiffs contend that they, since their purchases, and before that, Mr. Sackett, have freely used the road since at least 1928 when Mr. Sackett acquired such lands and that such use was clearly adverse to the interests of Mr. Metz and known to be so by him, who, on several occasions, took action to make it clear that the road in question was private property. However, it would .seem that Mr. Metz's action was primarily directed against picnickers, swimmers and trash dumpers rather than Mr. Sackett, his daughter, and his successors in title and those going into the latter's land with such persons' permission. In any event, signs put up by Mr. Metz were destroyed or ignored, and when in 1955, he placed a gate across the entrance to the road, it was torn down within a week.

■■■ It is well settled that continuous, uninterrupted, adverse use or enjoyment of a way over another's land for a period of not less than twenty years establishes a legal right to use and enjoy the same, Cooper v. McBride, 4 Houston 461. However, uses thus acquired by prescription are limited to those established by the evidence and not for any or all purposes. In other words, a prescriptive right acquired by a particular use does not warrant a materially greater use which has not been enjoyed for the full prescriptive period, Biggs v. Wolfe, 40 Del.Ch. 212, 178 A.2d 482. And this is not a case in which an unrestricted easement of passage has been granted by deed, Lyman v. Clayville, 36 Del.Ch. 209, 128 A.2d 316.

■■■ The evidence adduced at trial satisfies me that defendants' lands are indeed subject to a limited prescriptive easement for the benefit of the former Sackett lands, however, the adverse non-public passage shown to have been made for fifty years and more over the woods road through defendants' lands has been limited to intrusions by horse and carriage and motor vehicle for fishing, skating, swimming, hunting, and other forms of outdoor recreation, as well as for gathering firewood and the operation of one or more saw mills. In fairly recent years, intrusions over the road for the purposes of dumping trash and garbage have increased. However, these last named activities seem to have been confined to what are now the Metz and Lofland porperties for less than the prescriptive period. In opposition to plaintiffs' contention that such adverse use has established prescriptive rights, defendants argue that a gate erected by Mr. Metz in 1955 as well as other protests on his part destroyed the legal continuity of the adverse use on the part of Mr. Sackett and those claiming under him. Other ˙action taken by Mr. Metz consisted of having fill dumped on the woods road here involved. However, the dirt so placed was quickly driven over and dispersed. By the same token signs he put up declaring the road to be private property did not serve to impede use of the road.

Such actions on the part of Mr. Metz were not, in my opinion, sufficient to interrupt the establishment of limited prescriptive rights as opposed to public intrusions. As stated in 3 Am.Jur.2d, Adverse Possession, § 69. "It is generally recog-

nized that a temporary break or interruption not of unreasonable duration does not destroy the continuity of possession." Compare Lewes Trust Company v. Grindle, 53 Del. 396, 170 A.2d 280. I am accordingly satisfied that plaintiffs and their predecessors in title and those acting under them have adequately demonstrated continuous and uninterrupted use of the woods road here in issue so as to establish limited prescriptive easements for swimming, hunting, skating, fishing and other similar outdoor recreations, as well as for gathering firewood, and operating a saw mill.

Perhaps anticipating that their claimed prescriptive rights, if established, would not fully serve their present purposes, which are concerned with the building of summer cottages and even permanent residences as opposed to the more limited uses established by the evidence, plaintiffs contend alternatively that the old woods road here in issue is in fact a public road running between County Roads #'s 214 and 38, a right of way which, for many years, was used by farmers and others, and that as members of the public they are entitled on such independent basis to use such right of way. In other words, is it apparently contended that the road in question has been in some manner dedicated to the public by the owners and former owners of the lands here involved and that such dedication has been accepted by public user.

Dedication is an intentional appropriation or donation of land by its owner for public use, 23 Am.Jur.2d, Dedication, § 1. Prior to the enactment of the predecessor of 17 Del.C. § 509,[4] public user for an extended period of time without more was deemed to be evidence of an intent to dedicate a private way to the public. By the enactment of such statute the Legislature apparently purported to change the common law in this State respecting roads claimed to have been made public by tacit acquiescence. As stated in Johnson v. Stayton, 5 Harr. 448.

"So many neighborhood roads exist by the indulgence of landowners, that the common law was considered harsh in reference to forfeiting private land by indulgence, and the Legislature has required that such a road shall have not only been used, but maintained and kept up by the public for twenty years, to make it a public road against the owner of the land."

The cited statute thus appears to be designed to protect the rights of a complacent or indulgent landowner who does not object to public use of his road but who has no intent to dedicate such road to the public. Where, however, a developer records a plot delineating streets for public use, a positive intent to dedicate to the public is spelled out, which, coupled with public user, establishes rights in the public. In this connection, there appear to have been a number of cases in this state in which dedication by an owner has been implied rather than made directly with the same result. Compare State v. Brown, 6 Boyce 179, 97 A. 590,[5] Reinhardt v. Chalfont, 12 Del.Ch. 214, 110 A. 663, Hart v.

---

4. "All public roads, causeways and bridges laid out as such, or made by lawful authority, or which have been used as such and maintained at the public charge for 20 years or more are declared to be common highways. The usage by the public for 20 years or more of any road shall not cause the road to become a common highway or public road, unless the same has been maintained at the public charge for 20 years or more."

5. "The courts of this state have held that twenty years of uninterrupted use of a road by the public is evidence of a dedication of the road by the landowners to the public. The reasonable inference in respect to such a road is, that if the owner of the land through which it runs will permit the public to use it without interruption or objection, for the space of twenty years, this is evidence of its gift or dedication to the public as a road."

Durr, 38 Del.Ch. 523, 154 A.2d 898, and 4 Tiffany, Real Property, (3rd ed.) § 1101.[6]

■ I am satisfied in the case at bar, however, that not only has public use of the road been historically sporadic and limited but also that, insofar as the area here involved, general public use was discouraged by Mr. Metz, who preceded defendants as owner of the lot bordering County Road #214. And while for fifty years ago and longer horse-drawn wagons did travel by way of the woods road from the mill on Clendaniel Pond to the mill at Cubbage Pond and vice versa, and other horse-drawn vehicles used the road as a short-cut between the Cedar Creek area and Lincoln or Milford, or for a pleasure drive, nonetheless such use diminished with the gradual disappearance of farm and carriage horses, and the road here in issue, except at its eastern end, became more of a woods path than a road, any public use thereof being confined to what are now the Truitt and Lofland lots, by campers, hunters, swimmers, fishers, persons seeking to wash their automobiles, and finally refuse and garbage dumpers. And as noted earlier, Mr. Metz [7] made it clear on the stand and by affirmative acts on several occasions that he intended no dedication to general public use, although he welcomed visits by Boy Scouts from Milford and Lincoln until their interest waned. Prior to the time of Mr. Metz's acquisition of his lot in 1954, I believe that the public use alluded to above and the attitude of indulgence exhibited on the part of former owners of the lot towards the public, taken together, are not enough to establish that plaintiffs and others have succeeded in establishing that the old woods road here in issue is in fact a public road. Finally, I am satisfied that after local grist mills in the area and in most of Sussex went out of business in the early 1940's when milled feed had to be imported in bulk to meet the needs of a burgeoning poultry business, any use of the road, except that which took place over the short cul de sac extending to what is now the Lofland lot, for the purposes above stated, was confined to the travel required by the saw mill operations which were carried on in the Sackett property some fifteen years ago.

Having failed to establish by the preponderance of the evidence that defendants' lot is traversed by a public road, but having succeeded, on the other hand, in establishing that such road is burdened with a limited private easement for the benefit of plaintiffs' lots, an order will be entered permitting plaintiffs to have access to their lots for the limited prescriptive uses enumerated in the foregoing opinion, and enjoining defendants from interfering with such user.

Order on notice.

6. "A mere non-assertion of his rights by the owner does not establish a dedication. If the acts of the owner of the land are such as unequivocally to indicate an intention to dedicate, the fact that he had no such intention is immaterial. But in case his acts are equivocal in character, he may, according to some decisions, testify as to his actual intention."

7. He testified as to the condition of the woods road at the time of his purchase in 1954 as follows: "It was just two-wheel tracks, and there were some small bushes growing up in the middle, and grass. And bushes from the side were pretty well hanging in."