Joshua SIMON and Jeremy Simon by
their next friend Karin Simon
individually, Petitioners,

v.

James R. PETTIT and Robert O.
Soleway, Respondents.

No. 82SC235.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1984.

Peter Alan Shelley, Peter N. Simon,
Boulder, for petitioners.

White & Steele, P.C., Denver, and John
E. Clough, Santa Monica, Cal., for respondents.

ROVIRA, Justice.

We granted certiorari to review the decision of the court of appeals in *Simon v. Pettit*, 651 P.2d 418 (Colo.App.1982), reversing a ruling by the trial court that two footpaths across private property in Boulder had become public highways by prescription.[1] The court of appeals held that footpaths are included within the definitions of "road" and "highway" but that the public did not acquire prescriptive rights because the use of the two footpaths was

---

1. *See* § 43–2–201(1)(c), 17 C.R.S. (1973), discussed *infra.*

permissive and not adverse. We affirm the court of appeals' decision on other grounds.

## I.

Joshua and Jeremy Simon, plaintiffs, by their next friend, Karin Simon, brought an action in 1977 against James Pettit and Robert Soleway, defendants, to establish the existence of two public easements across a vacant parcel of land owned by the defendants in Boulder. The property is located in a residential area three blocks from the downtown Boulder Mall. It is unimproved, approximately 80' × 100' in size, and located on the side of a moderately steep hill. Traversing the property are two narrow but well-defined footpaths, one of which angles up the slope and connects with an alley at the northwest corner of the property. The alley then proceeds west to 15th Street. The other footpath angles down the slope to a point along Mapleton Avenue near the beginning of a sidewalk. Both of the footpaths are approximately eighteen inches wide and are covered with sandy soil. Their common origin is a footpath traversing the property directly east of the defendants' property. This footpath begins near 17th Street and runs parallel to Mapleton Avenue about twenty feet north of the street. Before reaching the eastern boundary of the defendants' property, it forks into the two footpaths at issue in this case. A diagram of the various properties and footpaths appears in the Appendix.

Before 1967, the defendants' property and the property directly to the east were owned by Michael Rinn. George Newton, the owner of a parcel of land north of the alley and northwest of the defendants' property, bought the entire Rinn property in 1967. In 1975, he sold the eastern portion of the Rinn property, including the former Rinn house, to Joseph and Caroline Fletcher. He then sold the western portion of the Rinn property to the defendants. The two footpaths were clearly visible at this time; in fact, aerial photographs intro-duced at trial revealed that the paths were worn and discernible as early as 1949. The plaintiffs, two neighborhood children who use the footpaths, called eight witnesses who testified about the use of the paths by children and adults as a shortcut to a nearby junior high school and its recreational facilities and as an alternative to walking or jogging along Mapleton Avenue. The period of time covered by the witnesses' testimony was from 1953 to the date of the trial in 1978. None of the defendants' predecessors ever interfered with or stated any objection to the use of the two footpaths.

The defendants were aware of the existence of the footpaths when they bought the western portion of the Rinn property in 1975. Their intention, nevertheless, was to construct a six-unit condominium building at that location. In 1976, they obtained a rezoning of the property and approval for the construction of a "Planned Unit Development" from the Boulder City Council. The existence and use of the footpaths was not brought to the council's attention when it made these decisions. In 1977, the plaintiffs brought this action, seeking to establish the existence of public easements along the two footpaths and to enjoin construction of the condominium building. In a pretrial ruling on the defendants' motion to dismiss, the trial court decided that section 43–2–201(1)(c), 17 C.R.S. (1973), which declares that roads used adversely for twenty years are public highways, was "the only method by which the public can acquire a prescriptive easement in Colorado." This statute, it concluded, "encompasses more than simply roads which are capable of supporting vehicular traffic." In its view, the plaintiffs stated a cause of action because "the term 'road' as used in [section] 43–2–201(1)(c) includes a footpath."

The case was tried to the court with a consent jury under C.R.C.P. 39(c).[2] In a special verdict, the jury answered eight

---

**2. "Advisory Jury and Trial by Consent.** In all actions not triable by a jury the court upon motion or of its own initiative may try any issue with an advisory jury, or ... the court, with the consent of both parties may order a trial with a jury."

questions concerning each footpath. It found that each path had been used by the public for twenty consecutive years, that each had a definite and specific line during the twenty-year period, and that the use of each path was actual, visible, hostile, and under a claim of right. The jury further found that the use of the footpaths was known to the landowners and was with their implied permission. Their permission, however, had been indicated only by silent acquiescence, not by any affirmative act. Based on these findings, the trial court issued a ruling and order recognizing the two public easements across the defendants' property. It then decided that, in the exercise of its inherent equitable powers, the easements would be relocated along the boundary of the defendants' property so as not to preclude entirely the development of the land. The trial court stated:

> The Court ... finds that the present locations of the easements preclude any sort of development upon Defendants' land, and that the easement may be efficiently relocated and still allow for at least an equal easement of way across Defendants' land. The Court, therefore, will allow the public easements to be moved. To decide otherwise would subject Defendants' entire estate, not just the footpaths, to a servient status with respect to Plaintiffs' rights of way. A contrary result would mean that any undeveloped land that might be used by school children is in extreme danger of existing solely for the purpose of providing a short-cut to school. Such a result would be patently inequitable.

> Furthermore, the easement in issue is a public one. Public easements should not exist in derogation of public policy. Modern land use planning dictates the efficient use of resources. To require a developable plot of land to sit forever idle for the convenience of school children would place form over substance and hinder the rational process of progress in a growing community. In addition, the relocated easement would be maintained by Defendants. Such a right-of-way would be a great deal safer than the unkempt paths as they now exist.

The defendants submitted a plan to build approximately sixty steps along the eastern boundary of the property extending from Mapleton Avenue up the hill to the northern edge of the property. The trial court accepted the plan and entered its final order relocating the easements in July 1979. The plaintiffs appealed from the court's order denying their request for an injunction and relocating the easements. The defendants cross-appealed from the ruling that a footpath can be a road or highway and that the use of the footpaths in this case established public easements across their property.

The court of appeals reversed. *Simon v. Pettit*, 651 P.2d 418 (Colo.App.1982). It agreed that the definitions of "road" and "highway" were broad enough to include footpaths. However, it decided that the two footpaths had not become public highways because their use by the public had been permissive. In reaching this decision, the court of appeals acknowledged the presumption announced in *Mahnke v. Coughenour*, 170 Colo. 61, 458 P.2d 747 (1969), that the public's use of land for a right-of-way will be deemed adverse where such use is shown to have occurred for the prescribed period of time. However, it then recognized an exception to the basic presumption of adversity in cases where the land involved is vacant, unenclosed, and unoccupied. *See Boullioun v. Constantine*, 186 Ark. 625, 54 S.W.2d 986 (1932); *Lieber v. People*, 33 Colo. 493, 81 P. 270 (1905). According to the court:

> "[W]here the land is vacant and unoccupied and remains free to public use and travel until circumstances induce the owner to enclose it, the mere travel across it, without objection from the owners, does not enable the public to acquire a public road or highway over the same. Such use by the public of vacant and unoccupied land by travel over it, even after the period of twenty years, is regarded merely as a permissive use."

*Simon*, 651 P.2d at 420 (quoting *O'Connell v. Chicago Terminal Transfer Railroad Co.*, 184 Ill. 308, 56 N.E. 355, 357 (1900)). Since the parties had stipulated that the defendants' property was "vacant, undeveloped and unenclosed," the court of appeals concluded that the public's use of the footpaths was permissive and that, consequently, no public highway or road had been established.

### II.

■ Section 43–2–201(1)(c), 17 C.R.S. (1973), provides: "(1) The following are declared to be public highways: ... (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years...." This statute codifies the common law method by which the public can obtain title by adverse use. *See Mahnke*, 170 Colo. at 67, 458 P.2d at 750; *People ex rel. Mayer v. San Luis Valley Land & Cattle Co.*, 90 Colo. 23, 5 P.2d 873 (1931). If the public uses a road adversely, under a claim of right, and without interruption for the statutory period of twenty years, and the landowner knows of but does not object to the use, the requirements of section 43–2–201(1)(c) are satisfied and the road assumes the character of a public highway. *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984); *Mayer*, 90 Colo. at 25–26, 5 P.2d at 874; *Board of County Commissioners v. Ogburn*, 38 Colo.App. 212, 554 P.2d 700 (1976). An initial question, and the first issue to be resolved here, is whether the two footpaths in this case come within the definition of a "road" and thus may be declared to be a public highway under the statute.

■ This court has not had occasion, until now, to interpret the word "road" as it appears in section 43–2–201(1)(c). In another context, we adopted a broad definition of the word "road" in deciding that a county's sale of bonds to finance the construction of airport landing strips did not violate a con-stitutional provision prohibiting counties from contracting debt "except for the purpose of ... making or repairing public roads." [3] *Hale v. Sullivan*, 146 Colo. 512, 362 P.2d 402 (1961). The word "road," we said, "is a generic term and includes overland ways of every character; the scope to be given it, depending on the context in which it appears." *Id.* at 518, 362 P.2d at 405. We concluded that airport landing strips, as part of the basic transportation system, fell within the general framework of "public roads" for purposes of that constitutional provision. *Hale* stands for the principle that, in certain situations, a broad definition of what constitutes a road should be adopted. *See Opinion of the Justices to the Senate*, 370 Mass. 895, 352 N.E.2d 197 (1976); *Comstock v. Wheelock*, 63 Mich.App. 195, 234 N.W.2d 448 (1975). In other situations, however, a more restricted definition may be warranted. We reaffirm our previous statement in *Hale* that the scope to be given the word depends upon the context in which it appears. *See Safeway Trails, Inc. v. Furman*, 76 N.J.Super. 90, 183 A.2d 788 (1962), *rev'd*, 41 N.J. 467, 197 A.2d 366 (1964) (superior court held that, in the context of a state highway-users tax statute, the word "highway" did not include toll roads; supreme court disagreed).

■ In our opinion, the footpaths in question are not "roads" within the meaning of section 43–2–201(1)(c). First, while the intention of the legislature cannot be definitely ascertained at this time, we do not believe that the legislature intended an eighteen-inch footpath in a populated, residential, urban area to be considered a "road" so as to permit it to be declared a public highway. When the statute was adopted in 1891, Section 1 (HB 119), 1891 Colo.Sess.Laws, 302, 302–303, Colorado was, for the most part, a rural state. A substantial number of the members of the legislature were farmers and ranchers who lived in rural areas. Dedicated city streets

---

**3.** *Colo. Const.* art. XI, § 6. This provision was repealed and a new section 6 enacted in 1969. *See* Senate Concurrent Resolution No. 6, 1969 Colo.Sess.Laws 1247, 1251.

and platted subdivisions within cities were the exception rather than the rule.

In order to conclude that the footpaths involved here were subject to the provisions of section 43–2–201(1)(c), we would have to read the statute as saying that all "footpaths" over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years are declared to be public highways. We do not believe this interpretation of the statute to be within the legislative intent. The paths are only eighteen inches wide, unimproved, and located on the side of a hill in a populated, residential, urban area. We believe that it is within the legislative intent to consider the characteristics, conditions, and locations of the ways in applying the statute. Furthermore, consideration of these factors is consistent with the interpretation of "roads" in other jurisdictions. *See People v. Waitkus*, 30 Ill.2d 335, 196 N.E.2d 668 (1964) (narrow, unimproved, overgrown dirt path not a public highway); *Witteveld v. City of Haverhill*, 421 N.E.2d 783 (Mass.App.1981) (physical characteristics, including unimproved condition and the precipitous rise and fall in grade, provided evidence that no public way existed); *Watson v. Board of County Road Commissioners*, 52 Mich.App. 258, 217 N.W.2d 129 (1974) (logging trail consisting of two ruts and a mound of turf was in no condition to be maintained and was not a public highway).

Second, there is no evidence that the city even knows the paths exist, much less that the city has maintained or in any way accepted them as public streets. We recognize that section 43–2–201(1)(c) does not require the city to expend funds or otherwise demonstrate its willingness to accept highways established by prescription; however, each of the other subsections of the statute requires some form of action or knowing inaction by the appropriate governmental body.[4] In this case, evidence that the city had maintained the footpaths or included them on a map of the city's street system would be a strong indication that the paths had acquired a status as public highways.[5] *See Kratina v. Board of Commissioners*, 219 Kan. 499, 548 P.2d 1232 (1976) (to establish a public road by prescription, there must be some action, formal or informal, by public authorities indicating their intention to treat the road as a public one); *Jakobson v. Chestnut Hill Properties, Inc.*, 106 Misc.2d 918, 436 N.Y.S.2d 806 (1981) (road must be kept in repair or "taken in charge" by public authorities before it becomes public; this requirement is implied in the public highways statute).

Third, footpaths in an urban setting, serving primarily as a shortcut to the other side of the block, surrounded on all sides

---

**4.** Section 43–2–201 provides in its entirety:

> **Public highways.** (1) The following are declared to be public highways:
>
> (a) All roads over private lands dedicated to the public use by deed to that effect, filed with the county clerk and recorder of the county in which such roads are situate, when such dedication has been accepted by the board of county commissioners. A certificate of the county clerk and recorder with whom such deed is filed, showing the date of the dedication and the lands so dedicated, shall be filed with the county assessor of the county in which such roads are situate.
>
> (b) All roads over private or other lands dedicated to public uses by due process of law and not heretofore vacated by an order of the board of county commissioners duly entered of record in the proceedings of said board;
>
> (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years;
>
> (d) All toll roads or portions thereof which may be purchased by the board of county commissioners of any county from the incorporators or charter holders thereof and thrown open to the public;
>
> (e) All roads over the public domain, whether agricultural or mineral.

**5.** In several cases decided under section 43–2–201(1)(c), we considered evidence of county maintenance before declaring roads to be public by prescription. *See, e.g., Mahnke v. Coughenour*, 170 Colo. 61, 458 P.2d 747 (1969); *Shively v. Board of County Commissioners*, 159 Colo. 353, 411 P.2d 782 (1966); *People ex rel. Mayer v. San Luis Valley Land & Cattle Co.*, 90 Colo. 23, 5 P.2d 873 (1931).

by alternative routes along established streets and sidewalks, simply do not provide a sufficiently compelling reason to rigidly interpret the public highways statute. *See Lofland v. Truitt*, 260 A.2d 909 (Del. Ch. 1969) (use of woods road was mostly as a shortcut or for a pleasure drive); *Felici v. Pennsylvania—Reading Seashore Lines*, 83 N.J.Super. 373, 200 A.2d 126 (1964) (footpath used as shortcut for the sake of convenience was not a public highway); *Burrell v. Kirkland*, 242 S.C. 201, 130 S.E.2d 470 (1963) (shortcut across private properties should not be adjudicated on piecemeal basis). For the above reasons, the two footpaths should be excluded from the definition of "road" in section 43–2–201(1)(c).

■ Because we choose to resolve this case on the issue of whether the footpaths

qualify as roads under the statute, we need not address the second issue discussed by the court of appeals. We note only that the defendants' property was part of the former Rinn property, which was at all times occupied, until 1975. This fact makes it unlikely that the use of the property was permissive between 1953 and 1975. *See Village of Hillside v. Chicago, Aurora & Elgin Railroad Corp.*, 40 Ill. App.3d 861, 353 N.E.2d 227 (1976) (presumption of permissive use does not apply to period before the land became vacant and unoccupied).

The judgment of the court of appeals is affirmed.

LOHR, J., dissents.

DUBOFSKY, J., does not participate.

APPENDIX

LOHR, Justice, dissenting:

The majority has developed several inviting reasons why we should not "rigidly

interpret" the public highways statute to include the footpaths at issue here within the definition of "roads" and "highways"

as used in that statute. However, I am unconvinced that the intent of the legislature as expressed in the relevant statute is as the majority declares.

Section 43–2–201(1)(c), 17 C.R.S. (1973), simply provides:

> (1) The following are declared to be public highways:
>
>     \*    \*    \*    \*    \*    \*
>
> (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years....

The restrictions on the operation of this statute found by the majority to be the intent of the legislature are not expressed or implied in the statute. Nor does the majority cite to any legislative history or contemporaneous expression indicating that the legislature intended these restrictions to prevent certain ways over private lands from becoming public highways under the statute even though the public has traveled along such ways adversely without interruption or objection for twenty consecutive years.

As the majority concedes, when the legislature adopted this statute in 1891, the terms "road" and "highway" were recognized in the existing decisions, texts and legal dictionaries as generic terms for ways of all character, including footpaths. *See, e.g., Arkansas River Packet Co. v. Sorrells,* 50 Ark. 466, 8 S.W. 683, 684 (1888); *Pappenburg v. State,* 10 Ala.App. 224, 65 So. 418, 419 (1914) (*see* authorities cited therein). This continues to be the general rule today. *See, e.g., Hale v. Sullivan,* 146 Colo. 512, 518, 362 P.2d 402, 405 (1961); *Muscolino v. Superior Court,* 172 Cal. App.2d 525, 341 P.2d 773, 774 (1959); *Levy v. Kimball,* 50 Haw. 497, 443 P.2d 142, 144 (1968); *Albee v. Town of Yarrow Point,* 74 Wash.2d 453, 445 P.2d 340, 344 (1968); *Stegman v. City of Fort Thomas,* 273 Ky.

309, 116 S.W.2d 649, 651 (1938); *Black's Law Dictionary* 862 ("highway"), 1491–92 ("road") (rev. 4th ed. 1968); 10 E. McQuillin, *The Law of Municipal Corporations* § 30.02 (3rd ed. rev. 1981). If the legislature intended in 1891 to exclude from the terms "road" and "highway" footpaths in urban areas, or such of those footpaths as are shortcuts, it is not unreasonable to assume that the legislature would have imposed express limitations on the generic terms in the statute.

The majority also concedes that section 43–2–201(1)(c) does not require the city to demonstrate its willingness to accept a public highway as a condition to creation of such a highway under that statute. Such willingness or action by the city has evidentiary, but not controlling, significance. *See Board of County Commissioners v. Flickinger,* 687 P.2d 975 (Colo.1984). In apparent contradiction of that concession, however, the majority then cites cases to the contrary from other jurisdictions. These authorities were decided under different statutory and case law backgrounds and are inapposite. The fact that some other subsections of the statute specifically require some form of action or knowing inaction by the appropriate governing body simply bespeaks the likelihood that the legislature did not intend such a requirement to be imposed on the public highway by the public use subsection of the statute.

The footpaths are "roads" within the meaning of section 43–2–201(1)(c). The implicit ruling of the trial court that the other requirements of that statute have been satisfied is fully supported by the record. Therefore, I would reverse the judgment of the Colorado Court of Appeals and direct that the trial court's judgment that the footpaths are public highways be affirmed.[1]

---

1. No useful purpose would be served by addressing the trial court's ruling that the location of the footpaths can be changed by an exercise of the court's equitable powers. I express no opinion on the correctness of that part of the trial court judgment. For the same reason, I do

not elaborate on my conclusion that the land
crossed by the paths was not vacant and unoc-
cupied, and that, therefore, the Colorado Court
of Appeals was in error in reversing the trial-lev-
el determination that the public use of the paths
was adverse, not permissive.