**BUILD MART CORPORATION,**
Plaintiff,

v.

**GENERAL INSURANCE COMPANY OF AMERICA, Defendant.**

No. 71 C 951.

United States District Court,
N. D. Illionis, E. D.

Dec. 17, 1971.

Gerald White, Chicago, Ill., for plaintiff.

Kralovec, Sweeney, Marquard & Scoby, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion For Summary Judgment*

Plaintiff is engaged in the sale of home and building supplies at a number of locations in California and at one location in Arizona. Defendant insurance company, on April 5, 1970, issued to plaintiff a "monthly reporting policy" of insurance designated "Special Multi-Peril Policy-Commercial," effective as of the date of issue and expiring on April 5, 1973. The portion of Section I of the policy relevant to this case insures plaintiff's personal property against loss of fire at the locations specified therein up to a blanket limit of $2,800,000.00. On April 23, 1970, 18 days after the inception of the policy a fire occurred at one of the plaintiff's locations. There is no *factual* dispute that the following figures represent the loss incurred by plaintiff as a result of the fire and that the items involved were of the type covered by the policy:

| | |
|---|---|
| Personal Property | $51,404.06 |
| Debris Removal | 1,579.10 |
| Business Interruption | 1,825.00 |
| | $54,808.16 |
| Less, special loss deductible | 250.00 |
| Total Loss | $54,558.16 |

The dispute, one that is a purely legal rather than a factual one, revolves around whether the entire amount can be collected under certain provisions of the policy. The "Merchandise Block Coverage Form" that is part of Section I of the policy is composed of twelve subsections that deal with the obligations, conditions and limitations of the property coverage and it is the interpretation of Subsection XII, headed "Reporting Provisions" that is here in contention.

The issue in this case being one of first impression it would be beneficial to first discuss the particular type of insurance involved before turning to the specifics and both the content and application of the REPORTING PROVISIONS in the policy in question.

The type of insurance involved is commonly known as a "monthly reporting policy" or a provisional "reporting form policy." A policy of this sort is designed to allow one who has a fluctuating stock of goods or inventories to obtain

coverage that varies according to the value of these goods, the premium likewise fluctuating in proportion to inventory value at a given time. Such a policy has many advantages. It eliminates the guess work involved in attempting to project future inventory levels as of the time of the issuance of the policy and prevents the unnecessary costs of over-estimating future stock and thus paying premiums for coverage above the value of that stock. It also obviates the dangers of underinsuring whereby an estimate of future inventory is too low and the loss represented by the gap between coverage and actual loss must be absorbed by the insured. When the policy is issued it contains a "provisional" premium that reflects the initial amount of coverage. The coverage is kept up to date on the basis of periodic adjustments that reflect higher or lower inventory levels. Most important to the insurer is that he is not insuring a greater risk for an insufficient premium. Thus in order to maintain a proper risk-premium ratio the insurer must have as accurate an assessment of inventory values as is possible and a monthly reporting policy usually requires the insured to report not later than 30 days after the last day of each calendar month the total actual cash value of the property at every location. The insured pays a premium based upon the average value indicated by these monthly reports; an additional premium when an excess in value over the provisional amount is indicated by the reports or he receives a refund when the provisional premium proves to be too high in proportion to the monthly value.

If the required monthly report is not filed and a loss occurs the loss is adjusted according to the values filed in the last report prior to the loss.

The monthly reporting policy also includes a "Full Reporting Clause", that requires the insured to report the full value of the property to be covered in each monthly report in order to prevent the insured from undervaluing his inventory thereby reducing his premium and increasing insurers premium-risk ratio. For this reason it has sometimes been called the "honesty clause". In the event that less than the full value of inventory to be covered is reported and a loss occurs an adjustment is made by determining the ratio of the reported value to the full value at the time of the report and then applying that same ratio to the actual loss. The formula for the full reporting clause has been illustrated as:

$$\frac{\text{Reported value}}{\text{Actual value}} \quad X \quad \text{Loss} = \text{Liability}$$

See Aetna Insurance Co. v. Rhodes, 170 F.2d 111 at 112. (10th Cir. 1948). To give a simple example, assume a monthly report stated the value of inventory to be $8,000 and a premium was paid reflecting that amount of risk and subsequently a fire occurred causing damage of $1,000 but it was determined that the actual full value of the total inventory at the time of the loss was $10,000 rather than the stated $8,000. An adjustment would be made by determining the ratio of $8,000 to $10,000, that is 80%, and then applying that ratio to the loss. Thus 80% of the $1,000 loss would be covered and the insurer would only be liable for $800.

Against this general backdrop we will now turn to the specifics of this case. The policy entered into between plaintiff and defendant contains the reporting provisions common to this form of coverage:

## XII.  REPORTING PROVISIONS

### A.  PROVISIONAL AMOUNT CLAUSE:

The amount of insurance provided for hereunder is provisional and is the amount on which the provisional premium is based, it being the intent of this insurance to insure hereunder the total actual cash value of the property described herein subject to the Limits of Liability for all Contributing Insurance. Any loss in excess of the limits stated in this policy shall be borne by the insured, notwithstanding the requirement that premium is to

be adjusted on the basis of full values reported.

### B. VALUE REPORTING CLAUSE:

As respects property covered under Item IIA, the insured shall report in writing to this Company not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each month. As respects property covered under Item IIB, the insured shall report in writing to the Company not later than 30 days after the last day of each calendar month, the total aggregate actual cash value of such property at all such locations as of the last day of each month. At the time of any loss, if the insured has failed to file with the Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable. If the inception date of this policy is the last day of the calendar month, then the first report of values due shall show the total actual cash values as of that date.

### C. FULL REPORTING CLAUSE:

As respects property covered under Item IIA, liability under this policy shall not in any case exceed that proportion of any loss hereunder which the last value reported prior to the loss at the location where the loss occurs bears to the total actual cash value at that location on the date for which such report was made; and liability for loss hereunder occurring at any location acquired since filing the last report (except as provided in the Value Reporting Clause) shall be apportioned in a like manner, except that the proportion used shall be the rela-

tion that the values reported prior to the loss at all locations bear to the total actual cash values at all locations on the date for which such report was made.

As respects property covered under Item IIB, liability under this policy shall not in any case exceed that proportion of any loss hereunder which the last value reported prior to the loss bears to the total aggregate actual cash value on the date for which such report was made.

Plaintiff's policy was issued on April 5, 1970 for a provisional blanket cash value of $2,800,000, [The words "replacement cost" were substituted by endorsement for the words actual cash value.] and under the Section I, Subsection XII Reporting Provisions the first report of values was due on or before May 30, 1970. In the interim, between the date for the first report of values, a fire occurred and plaintiff sustained a loss of $54,808.16. The policy having a $250 deductible clause this was automatically reduced to $54,558.16. On August 18, 1970 defendant advanced $40,000 to defendant and the amount left owing on the loss is therefore $14,558.16.

The problem as to the coverage of the policy arises because the "replacement cost" of the property on the date of the fire was $3,319,219 rather than the $2,800,000 stated in the policy on the date of issue.

Defendant argues that the "Full Reporting Clause" (c.) of Subsection XII was in effect since there was an increase in value from the date of issue to the date of loss and therefore the liability of the company is reached by determining the ratio of the $2,800,000 stated on the date of issue and the $3,319,219 replacement value on the date of the fire and applying that percentage to the loss. Thus 84% being the ratio of the former figure to the latter, the company's liability would be 84% of the loss, less the $250 deductible or $54,808.16 (loss) X 84% (ratio of $2,800,000 to $3,319,219)–$250 (deductible) = $45,788.72.

Plaintiff argues that the "Full Reporting Clause" could not go into effect until the first monthly report had been filed on May 30, 1970 under the "Value Reporting Clause" or had become delinquent and that the payment of the loss is therefore governed solely by the "insuring clause" where it is stated that ". . . this company (the insurer) . . . does insure . . . to the extent of the actual cash value of the property at the time of the loss . . . against all loss by fire . . .". Consequently, the plaintiff contends that the blanket coverage of $2,800,000 on the date of issue governs and covers his claim for the full amount of $54,588.16.

Thus the parties are in agreement that if the court holds for plaintiff judgment will be entered in the amount of $54,588.-16. Since defendant advanced $40,000 to plaintiff prior to the litigation it is the task of this Court to determine only whether the company was *liable* for $54,-588.16. Thus only $14,558.16 of this amount is yet due. (The question of interest on this amount will be discussed subsequently); and if the Court holds for defendant the company's liability will be in the amount of $46,333.51 with only $6,333.51 yet due. The issue to be determined by this Court then is whether a provisional value in a reporting form policy can be deemed "the last value reported", prior to the due date for the first monthly value report, so as to bring the FULL REPORTING CLAUSE and its adjusted risk premium ratio into effect.

The issue in this case, at least our research so indicates, has never heretofore been decided and although there are some seemingly analogous cases, they are somewhat meager precedent for our situation. We must view this case as being *sui generis*.

Defendant insurance company bases its construction of the policy on its choice of interpretation of the *Full Reporting Clause*. The company contends that since the design of the monthly reporting policy permits the insured to undervalue his goods, the insurer must have recourse to reduce its risk in the proportion to which the undervaluation plays to the total value. That recourse must be available, the argument goes on, whether the undervaluation was in a monthly report or whether it was simply in the provisional amount stated at the date of issue. Defendant therefore asserts that the declaration of value of $2,800,000 by the plaintiff at the inception of the policy is a statement of value or a *reported* value and therefore brings into action the undervaluation protection of the Full Reporting Clause. Defendant admits that there is no provision in the policy that expressly deals with a loss prior to the due date of the First Report but construes the language of the relevant clause to support its interpretation. The clause in part states:

"C. FULL REPORTING CLAUSE:

"As respects property covered under Item IIA, liability under this policy shall not in any case exceed that proportion of any loss hereunder which the *last value reported* prior to the loss at the location where the loss occurs bears to the total actual cash value at the location on the date for which such report was made" (emphasis added)

The insurer asserts that the words "the last value reported" must mean the *last value accounted for* in the absence of a monthly value report irrespective of whether that report should have been but was not filed or was not yet due to be filed such as in our case. In the present situation the "last value reported" would be taken to mean the provisional value of $2,800,000 stated at the inception of the policy. Simply stated the insurer substitutes "the last valuation" or "the last value stated" for the words the "last value reported." To buttress the contention that the provisional amount of coverage should be held to be a declaration of value and construed as the "last value reported prior to the loss", defendant cites Aetna Insurance Company v. Rhodes, 170 F.2d 111 (10th Cir. 1948).

In *Aetna* a reporting form policy was issued to the insured on August 15, 1946 bearing a provisional limit of liability of $33,750 on merchandise in his tire shop with all contributing insurance limited to $45,000. No monthly reports were subsequently filed. On January 17, 1947 a fire occurred and the value of the property destroyed was later found by the jury to be $31,353.69. Aetna's defense and appeal claimed that the insured's failure to file any monthly valuation reports between the issuance of the policy and the date of the fire amounted to a forfeiture of all rights under the policy and that no recovery should be allowed. The Court of Appeals held that failure to file monthly reports could not constitute breach since the policy specifically provides *penalties* for failure to report *e. g.* the last report governs the value. Having established that no forfeiture was present the Court turned to the question of whether indeed any penalty should be assessed for failure to file and held that this requirement had been waived by the company because it gave no notice of cancellation and in fact reduced the premium after the failure to file one report. After discussing and disposing of some of the issues involved, the Court said:

> "Furthermore, under the policy, the provisional value of $33,750.00 fixed by endorsement on August 26, stood as the reported value until a monthly valuation report would thereafter be made. There being no other reported value, then the actual value was to be determined as of the time of the last provisional valuation, the date of the endorsement."

It is this latter statement that the defendant cites as precedent for his proposition that the *Full Reporting Clause* applies to a provisional value since it can be interpreted as being a reported value in the interim between date of issue and the first report.

We disagree both with defendant's interpretation of *Aetna* and with his construction of Subsection XII of the policy in this case. The passage relied on is mere dictum, the Court having decided the particular issue involved on other grounds and this Court certainly does not feel compelled, in deciding this heretofore virgin problem, to base its decision on a solitary pronouncement made in passing in a case whose facts are decisively different than those we are confronted with. If we are at all to rely on *Aetna*, that case would militate in plaintiff's rather than in defendant's favor. After discussing the waiver of the monthly reports the court said:

> "Should it be assumed that the valuation given in the policy may not be treated as a statement of the value and hence controlling as to the reported value until a monthly report be made, and that the parties contemplated the use of the monthly reports only in fixing the reported value under the value reporting clause, then the waiver of the provision of the value reporting clause excludes the operation not only of that clause but the full reporting clause as well. For under such view, the full reporting clause determines liability on the last valuation report as one of the necessary factors in such determination, and the waiver of the provision with reference to valuation reports must be regarded as a waiver also of the operation of the full reporting clause. In the absence of these two clauses, the general provision which insures against loss by fire to the extent of the actual value of the property destroyed is controlling, not to exceed the provisional valuation named in the policy." (170 F.2d at 115)

Thus it seems quite evident that value stated in the initial policy cannot be treated as a reported value until a monthly report is made and that the *Full Reporting Clause* is inseparably interwoven with the "value reporting clause" and where the latter has not been made operative the former cannot be in effect. If these two clauses are considered to be interdependent *after* several monthly reports have become due but have been waived, then *a fortiori* that the *Full Reporting Clause* cannot be operative

where its primer, the first monthly report has not yet come due. The passage in *Aetna* cited by defendant must be interpreted as an oversight. The court in its attempt to provide the fullest coverage possible for the insured under all alternatives permitted the provisional value to be a reported value because in that case the actual value and the Reported (provisional) value were both the same and the penalty ratio of the Full Reporting Clause had no effect. Undoubtedly had the situation been the same as in our case where the application of the Full Reporting Clause creates a penalty the court in *Aetna* would never have offered its dictum.

One need only look at all of the monthly reporting policy cases to see that they deal with delinquent monthly reports, with waivers of such reports or with understatements and overstatements of value none of these situations having a bearing on our case. Neither are any of the cases cited by defendant, such as American Eagle Fire Insurance Co. v. Burdine, 200 F.2d 26 (10th Cir. 1952) and Commonwealth Insurance Co. of New York et al. v. O. Henry Tent & Awning Co., 287 F.2d 316 (7th Cir. 1961) relevant to our case since various monthly reports had been filed in those cases and the problem was one of determining which was the "last report filed". The fact that the due date for the first monthly report has come and passed might well be the critical factor in setting the full reporting clause into motion and thus all of the remote analogies cited by defendant are of dubious precedential value on the specific issue of whether provisional value can mean reported value *prior to the due date* of the first monthly report.

Although we consider *Aetna* somewhat of a precedent for plaintiff's case we would be compelled to decide for the insured even absent any prior law on the subject. The problem before us is simply a case of contractual construction and a close scrutiny of the relevant reporting provisions leads us to concur in plaintiff's interpretation. The *Full Reporting Clause* states:

## C. FULL REPORTING CLAUSE:

As respects property covered under Item IIA, liability under this policy shall not in any case exceed that proportion of any loss hereunder which the last value reported prior to the loss at the location where the loss occurs bears to the total actual cash value at that location on the date for which such report was made; and liability for loss hereunder occurring at any location acquired since filing the last report (except as provided in the Value Reporting Clause) shall be apportioned in a like manner, except that the proportion used shall be the relation that the values reported prior to the loss at all locations bear to the total actual cash values at all locations on the date for which such report was made.

Defendant interprets "last value reported" as including the provisional value. In doing so he views the word "reported" in its broadest sense, meaning "stated" or "accounted for". The word "reported" must however be construed in a much narrower sense based upon the passages both preceding it and following it and viewed in the context of the complete Subsection XII. The entire "Value Reporting Clause" that precedes the "Full Value Clause" is permeated with the word "report": ". . . the insured *shall report* in writing . . . if the insured has failed to *file with the Company reports* . . the last *report* of values *filed prior to the loss.*"

There is no doubt that in that clause the report referred to is one that is to be *filed i. e.* the monthly report. It must follow then that "the last value reported" spoken of in the "Full Reporting Clause" is no different than the reports referred to in the preceding clause. To put it another way "the last value reported" of the "Full Reporting Clause" is simply a rearrangement of the words "the last report of values" appearing in the "Value Reporting Clause" and where the latter refers to the monthly report so must the former.

**434**

Furthermore, taking these two provisions in conjunction it also appears that the full value required to be reported refers to the value in monthly reports. The *Full Reporting Clause* begins by stating:

"As respects property covered under item IIA, liability shall not *in any case* exceed . . . ". (emphasis added)

Under our interpretation this means that even though a monthly report has been made that report is *still* not dispositive of coverage where the monthly report is not for full value. In other words, the two provisions operate in tandem the second progressing from the first: (1) basic value is determined by monthly reports and (2) *superimposed* on monthly report requirements is a full value requirement, and where there is no monthly report yet due there is nothing upon which to superimpose the Full Reporting Clause.

This same interpretation is evident from the "Full Reporting Clause" viewed by itself. Immediately following the phrase in contention the clause goes on to say:

" . . . and liability for loss hereunder occurring at any location acquired since *filing the last report* . . . (except as provided in the Value Reporting Clause) . . . ".

This language indicates that the reports or "reported" values refer specifically to *filed* reports only *i. e.* monthly value reports rather than to values *stated* which would conceivably include provisional values.

Thus, it is clear from the language of Subsection XII that the "Full Reporting Clause" can only be triggered *after* there has been a monthly report or a monthly report has become delinquent under the "Monthly Reporting Clause" and where the first report has not yet come due, such as in our case, the "Full Reporting Clause" and its actual value-reported value ratio is irrelevant and inoperable.

We therefore hold that the $54,558.16 loss incurred by plaintiff was fully covered by the "insuring clause" itself and that defendant having paid $40,000 on the claim now owes plaintiff $14,558.16 plus 5% per annum interest on that amount from August 18, 1970, the date the loss became liquidated.

The interest is awarded under Chapter 74, Section 2, Illinois Revised Statutes 1957. See also Di Leo v. U.S.F. & G., 109 Ill.App.2d 28, 35, 44–45, 248 N.E.2d 669.