525 P.2d 471 (1974)
KWAL PAINTS, INC., Plaintiff-Appellant,
v.
The TRAVELERS INDEMNITY CO., Defendant-Appellee.
No. 73-082.
Colorado Court of Appeals, Div. II.
May 7, 1974.
Rehearing Denied May 29, 1974.
Certiorari Granted August 26, 1974.
Hoffman, Goldstein, Armour & Lonnquist, P.C., Alan A. Armour, Denver, for plaintiff-appellant.
Wood, Ris & Hames, P.C., William K. Ris, Denver, for defendant-appellee.
Selected for Official Publication.
ENOCH, Judge.
Kwal Paints, plaintiff, initiated this action against Travelers Indemnity Co., defendant, *472 to recover losses caused by a fire at Kwal's Lakewood store, the contents of which were covered by a fire insurance policy issued by Travelers. Prior to trial, Travelers admitted liability to the extent of $52,932 and consented to the entry of a summary judgment for that amount in favor of plaintiff. After trial, an additional $16,742.38 was awarded to Kwal. Kwal appeals, contending that it did not recover the full amount to which it was entitled under the policy. We affirm in part and reverse in part.
The type of policy in effect on the date of the fire is commonly known as "reporting form insurance." As described by another court:
"Monthly reporting insurance is a device whereby the amount of insurance under the policy fluctuates with the value of the changing stock of merchandise in a going business. It is designed to afford complete coverage and at the same time to avoid the maintenance of insurance in excess of the value of the property insured, so that the amount of insurance, and the amount of the premium to be paid, are in direct proportion to the value of the goods on hand." Peters v. Great American Insurance Co., 177 F.2d 773 (4th Cir.).
Reporting form insurance is a coverage commonly selected by merchants whose inventory varies significantly, either in amount or location, from month to month. To provide flexible premium rates and coverage, the reporting form policy provides that premiums will be figured on the average monthly cash value of reported inventory. In operation, the insured pays an initial provisional premium which is adjusted at the end of the term of the policy on the basis of the average total values reported by the insured. The one significant obligation placed on the insured by the policy is that he must report, not later than 30 days after the last day of each calendar month, the cash value of the property at each location covered by the policy.
The two pertinent provisions of the policy in this case are:
"1. Report of ValuesNot later than 30 days after the last day of each calendar month . . . the Insured shall report in writing to The Travelers the values of all insured property as of the last day of each preceding month separately for each premises: (a) specified in the Sections I and IIDeclarations; and (b) newly acquired.
. . . . . .
3. Full Reporting ClauseThe Travelers shall not be liable for more than that proportion of any loss: (a) at a premises specified in the Sections I and II Declarations, which the last values reported for such premises under Provision 1(a) and filed prior to loss bear to the total [actual] value at that premises on the date for which the report is made." (Emphasis added.)
Sections I and II of the Declarations list 11 separate locations in Denver (including the Lakewood store), Boulder, Colorado Springs, and Pueblo which are covered by the policy. Provision 3, known as the "honesty clause," protects the insurance company in the event that the insured, either fraudulently or inadvertently, fails to report the true worth of goods covered by the policy. Under the honesty clause, the policy is not rendered void by the insured's failure to report actual cash values at the end of each month. Rather, the insurance company's liability for loss is reduced by an amount proportionate to the amount understated by the insured. In effect, under a policy of this kind, the amount of the insurance carried, the amount of the premium to be paid, and the extent of the liability of the company are controlled by the policyholder. Peters v. Great American Insurance Co., supra. By understating values in a monthly report, the insured can reduce his premium, but he also reduces his potential recovery in the event of loss. Build Mart Corp. v. General Insurance Co., 335 F.Supp. 428 (N.D.I11.); Albert v. *473 Home Fire & Marine Insurance Co., 275 Wis. 280, 81 N.W.2d 549.
The last monthly report submitted by Kwal prior to the fire covered the month of April 1971, and stated the value of the contents at the Lakewood store as $54,065. Although this report did not reach Travelers' agent until a few days after the May 30 deadline, the trial court found that the report was timely filed, and that finding is not challenged on appeal. The fire at the Lakewood store occurred on June 11, prior to the due date of the monthly report for May.
The controversy between Kwal and Travelers arose because the April report did not accurately state the actual value of goods on hand at the Lakewood store as of April 30. Beginning in January 1971, Kwal transferred warehouse inventory from its Water Street location (which is also covered by the policy) to Lakewood. For accounting purposes, Kwal wanted to segregate this inventory from the ordinary stock at the Lakewood store, and the books of the company did not reflect the change in location of the inventory. The April report to Travelers was computed on the basis of book value inventory at each location, even though Kwal's accountant who prepared the report had actual knowledge that part of the Water Street inventory had been moved to Lakewood. The actual cash value on April 30 of goods at the Lakewood store was $93,169. The trial court held that Travelers' liability for losses caused by the fire was limited, under the honesty clause, to that proportion of the loss which the reported values at the Lakewood store, as of April 30, bear to the actual values at Lakewood as of that date.

I.
The policy in question provides that premiums will be computed by applying an average rate to total monthly values at all locations, rather than applying a specific rate to each premise insured. Thus, the exact location of the goods has no bearing on the total amount of premium charged.
Kwal contends that when the average rate basis clause is read in conjunction with the reporting clause, an ambiguity in the policy appearsthe reporting clause requires the insured to report values separately for each premises, while the rate basis clause indicates that the location of goods is not relevant to the computation of premiums. Relying on this supposed ambiguity, Kwal further contends that, in applying the honesty clause, the proper fraction to be multiplied by the loss is total values reported for all premises over the total actual values for all premises.
The trial court found that in the April report Kwal overstated the value of goods at the Water Street store by the exact amount it understated goods at the Lakewood store. In other words, the combined values at the two premises and the insurance premiums charged thereon were identical under the incorrect value report to the amounts the combined values and premiums would have been under a correct value report. If we accept Kwal's argument, Travelers would be liable for the full amount of the loss caused but the fire.
Although an ambiguous insurance policy must be construed most strongly against the insurer, Coxen v. Western Empire Life Insurance Co., 168 Colo. 444, 452 P.2d 16; The Travelers Insurance Co. v. Jeffries-Eaves. Inc., 166 Colo. 220, 442 P. 2d 882, we cannot create an ambiguity where none exists. Jorgensen v. St. Paul Fire & Marine Insurance Co., 158 Colo. 466, 408 P.2d 66. We find no ambiguity in the value reporting endorsement at issue in this case. The policy clearly states that the insured must report monthly values "separately for each premises." In addition, the honesty clause states in plain language that Travelers' liability is limited by values reported for the premises where the loss occurs when compared to actual values at that location. Specific premises reporting is a condition of full coverage under the policy. Kwal breached this condition and, under the unambiguous terms of the *474 contract, it is limited to partial recovery of its loss.
We agree with Kwal's contention that because premiums are computed on the basis of total values at all premises, the separate reporting requirement is unrelated to the amount of premium charged. However, separate premises reporting assists the insurance company in monitoring the amount and location of goods insured at any given time. The requirement of reports listing value by location is reasonable and is an important condition in this type of policy.
The record shows that the agent of Kwal who approved the monthly reports was familiar with reporting form policies and knew that failure to report accurately actual values at each location would be penalized under the policy. In effect, he chose to be overinsured at the Water Street store and underinsured at the Lakewood store. The net result was that Kwal paid the same premiums which would have been required for exact coverage at each location. However, by filing inaccurate reports, Kwal failed to achieve exact coverage under the policy. We cannot relieve Kwal of the consequences of its own actions under the guise of interpreting a supposedly ambiguous contract.

II
Kwal's second contention is that the trial court's method of calculating Travelers' liability did not compensate fully for losses of inventory moved to the Lakewood store after April 30th. Kwal argues that the value report for May was not due until June 11th, and therefore Travelers is liable for the full value of any increase in inventory during May and June.
Once again, Kwal's contentions are contrary to the clear wording of the honesty clause, which states that Travelers' liability in the event of loss is to be calculated with reference to the "last values reported. . . and filed prior to loss." If the insured accurately reports actual values each month, he maintains full coverage on all goods, even if his inventory increases substantially prior to the due date of the next succeeding report. However, if he does not report values accurately, the penalty imposed by the honesty clause extends not only to goods covered by the last report filed, but also to subsequent increases in inventory. Travelers' liability decreases proportionately with respect to all losses if the insured does not properly report values. The trial court accurately computed liability with respect to increases in inventory.

III.
Kwal's final argument is that the court erred in failing to award interest on the summary judgment entered before trial. We agree.
The policy allowed Travelers 60 days to make payment on the claim. Kwal submitted its proof of loss on September 8, 1971; therefore Travelers was obligated to pay under the contract on or before November 8, 1971.
Summary judgment for $52,932 was entered and satisfied on March 29, 1972, but interest on that amount was not awarded. The final judgment entered after trial did award 6% interest from November 8, 1971, on the approximately $16,000 awarded as a result of the trial. Within the proper time, Kwal filed a motion to amend the judgment to provide interest on the amount awarded in the summary judgment.
Travelers does not contest the propriety of awarding interest on the $16,000. The same claim supports both the summary judgment and the final judgment, and the entire amount was due under the policy on November 8, 1971. Therefore, Kwal is entitled to interest on the amounts awarded in both judgments.
Travelers argues that Kwal did not request interest at the time summary judgment was entered. However, the summary judgment order reserved until trial all issues other than the amount of admitted liability. One of these issues would be the amount of interest to be awarded. Kwal *475 properly raised the question of interest in its motion to amend the judgment. See C. R.C.P. 56(d).
We affirm the judgment for the amounts awarded under the terms of the policy. We reverse that part of the judgment denying interest on the amount of the summary judgment, and remand the cause with directions to increase the judgment by the addition of 6% interest on the sum of $52,932 computed from November 8, 1971, to March 29, 1972.
SILVERSTEIN, C.J., and COYTE, J., concur.