No. 18,054.

EVA MARR *v.* EVA SHRADER.
(349 P. [2d] 706)

Decided February 29, 1960.

Messrs. GARRISON, DILTS & HANCOCK, MR. F. T. HENRY, for plaintiff in error.

Messrs. WATTS & WATTS, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the Court.

THE parties will be referred to by name or as they appeared in the trial court where plaintiff in error was defendant and defendant in error was plaintiff.

This cause arises as a result of a dispute as to the true location of the north boundary line of Township 38 north, Range 19 west, New Mexico Principal Meridian, Montezuma County, Colorado. It has resulted in an eighty acre conflict of ownership between plaintiff and defendant involving sections 1 and 12, in Township 38 north in the aforesaid range. Judgment was for the plaintiff and the defendant brings error.

The facts appearing from the record are briefly as follows: Roy G. Marr, husband of defendant Eva Marr, and her original predecessor in title, was the first person to pre-empt and then to homestead in the area. He secured his patent under what is termed the "original" United States Survey. Mr. Marr had gone upon open land in

1916, staked 160 acres as his own, went into possession, and in due course in 1917 was granted a patent from the federal government for the southeast quarter of section 1 in Township 38.

After Mr. Marr was located, one George W. Winklepleck, plaintiff's original predecessor in title, came to the area. Mr. Marr helped him locate along Marr's southerly boundary. What was then called the northeast quarter of section twelve in Township 38 was staked for Winklepleck.

On or about May 19, 1917, the United States Land Office, by virtue of the authority granted the Secretary of the Interior by 43 U.S.C.A., Sec. 772, caused a "Dependent Survey" to be made of Township 38. This resulted in a temporary new northeast corner of the Township. Subsequently, by virtue of the same authority, an "Independent Survey" was run and in 1923 was approved. The latter confirmed the "Dependent Survey's" corners. The Dependent and Independent Surveys had the practical effect of moving Mr. Marr's south boundary line north about a quarter of a mile and set over to the Winklepleck land the south eighty acres of the Marr homestead, while at the same time freezing Marr's northerly line.

Shrader's amended complaint states that defendant has unlawfully taken possession of the land to which plaintiff has a valid title by virtue of the later patent and asks that plaintiff be decreed the owner and be granted immediate possession of the eighty acres in dispute. Defendant's amended answer, along with a general denial, relies primarily upon the specific defenses of C.R.S. '53, 118-7-1, 6 and 8, being the general eighteen year adverse possession statute, the seven year statute of limitation for the recovery of land, and the seven year statute relating to possession under color of title and payment of taxes.

After a complicated set of pleadings the case was finally at issue and trial was had to the court. Prior

to this time there was a virtual plague of parties involved due to the claims of other neighbors to part of plaintiff's land not here involved, and the granting and subsequent assignments of various oil and gas leases. Fortunately these collateral matters were resolved before trial so that the issue presented to the trial court, and by writ of error in this court, was and is which of the two parties, Marr or Shrader, is the owner and entitled to possession of the eighty acres in dispute.

Though defendant urges several grounds of error we deem it necessary to only discuss one of them. As mentioned above, the record before us is replete with competent evidence that defendant's husband was the first one in the area; and that he received his patent based upon the original government survey, which survey was based upon the way he had staked his claim upon the ground. It further shows that he had gradually cleared much of the ground and farmed part of it; that between 1922 and 1945, when this dispute arose, he had at times rented out the farm; that in 1922 he had fenced at least part of his south line and in 1934 he had fenced along his entire south line next to a road that had been constructed there.

Plaintiff on the other hand was never in physical possession of the disputed eighty acres. She had lived in that neighborhood for a long time and prior to her claiming title to what she now asserts is the northeast quarter of section 12, she knew that Mr. Marr had fenced and was using and claiming the land in question. What she really seeks is to oust from possession and title a good faith settler who was first in time and use, and who relies on the original government survey, by asserting that the later government surveys give her a better title. With this premise we cannot agree, and conclude that the trial court was in error in so holding. Its findings and decree, based upon the evidence before it, are contrary to the law.

Without determining whether the eighteen year statute (C.R.S. '53, 118-7-1), or the seven year statute (C.R.S. '53, 118-7-6), apply to the situation before us, it is apparent that the seven year statute relating to color of title (C.R.S. '53, 118-7-8) does protect Marr. In this respect the trial court erroneously adopted the theory of plaintiff that defendant had failed to prove color of title. This decision was based upon the plaintiff's and trial court's interpretation of *Parks v. Roth* (1913), 25 Colo. App. 296, 137 Pac. 76. It was there held that a tax deed, offered solely as color of title, could not be used to prove title itself. For reasons which hereafter appear *Parks* is not applicable to this case.

In the instant case plaintiff's brief avers that:

"It is freely admitted that Eva Marr held legal title to said property, but it is denied that she has color of title or that if she had color of title such was proved upon the case."

Defendant's exhibits B and C were an abstract and supplemental abstract of title which were offered and received in evidence, and when received as offered were prima facie evidence of defendant's title under C.R.S. '53, 118-7-5. The following is the manner in which these became part of the evidence before the trial court, to-wit:

"THE COURT: They [exhibits B and C] are offered at this time?

"MR. HANCOCK: [Attorney for Defendant] They are offered in evidence at this time.

"MR. WATTS: [Attorney for Plaintiff] May I ask this: Are those abstracts being offered as evidence of title in fact or merely as evidence of color of title?

"MR. HANCOCK: I would prefer to state to the Court I am offering these both as to title in fact and color of title.

" * * *

"MR. WATTS: May it please the Court: I believe in one case, only one that I find in Colorado, Parks et al

versus Roth, 25 C.A. 296, the Court held in that case that a deed or any instrument offered as color of title merely cannot also be invoked as evidence of title in fact.

(Argument of counsel).

"THE COURT: The court is inclined at this time to admit them as evidence of title.

"MR. WATTS: We have no objection to the admission as to color of title, but we object to the same instrument being admitted both as to title and color."

█ It thus appears that these exhibits were allowed by the court as "evidence of title" by which from his holding adversely to defendant we must presume he meant that he did not consider them as color of title as well. In this the trial court was in error. Though *Parks* does hold that a document offered as evidence solely as proof of color of title may not also be invoked as proof of title, it does not hold that the same instrument may not serve both as color of title and as evidence of title itself. This the defendant sought to do here and the trial court should have considered these exhibits in both categories subject to any rebuttal evidence adduced by plaintiff. There being no such evidence, the defendant must be held to have proved color of title by the abstracts of title in evidence. This, considered along with the proved physical possession of defendant claiming against all the world and the payment of taxes, brings her within the statute.

We point out that as to the pertinent evidence such as Mr. Marr's being the first settler in the area, his helping Winklepleck locate next to him, and the three government surveys, there is no dispute in this record.

█ One other comment on *Parks* should be made. It is conceivable that the same document offered as color of title may be completely unobjectionable for that purpose and yet may on its face lack the requisites necessary to prove title itself. If the offer is to utilize it for both purposes, opposing counsel should be afforded the

opportunity to object to the lack of title prerequisites at the time the exhibit is offered. We can, however, conceive of no circumstance under which a document tendered as proof of title itself and so admitted in evidence could be objectionable as proof of the *lesser* status of mere color of title.

In the case before us the usual rules relating to adverse possession may not apply. Normally a record title holder is involved with someone who has laid claim to part of the former's land. Here defendant and her husband had a legal title and possession, though the latter was disputed to some extent by testimony that not all of the land was fenced. In this type of situation the Marr's possession was in law adverse to all the world, not just plaintiff Shrader. This raised a presumption of adverse possession in the defendant and it was incumbent upon the plaintiff to overcome it. This she did not do. It was then obligatory upon the trial court to find in favor of defendant on that ground. See *Hodge v. Terrill* (1951), 123 Colo. 196, 228 P. (2d) 984.

One other observation is called for in relation to plaintiff's claim that the later surveys upon which she relies disseize this defendant. The statute in question, 43 U.S.C.A. Sec. 772 reads:

"The Secretary of the Interior may, as of March 3, 1909, in his discretion cause to be made, as he may deem wise under the rectangular system on that date provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of; *Provided, That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement.*" (Emphasis supplied.)

Apparently the federal government applied its power to order such surveys affecting this land even though these lands were not "remaining undisposed of." In any

event we note that this statute expressly provides that no resurvey (as here) "shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement."

To hold that defendant, who bases her claims upon her husband's initial title, who legally homesteaded and patented the land, can be ousted by these later surveys is to disregard the express provisions of the very statute by which the surveys were made and by which Congress intended to protect homesteaders and their successors.

If one of two innocent parties must suffer a loss of land due to boundary line readjustments called for by later official surveys, it must fall upon the plaintiff here who is later in time and who has never been in actual possession of the eighty acres in question.

The judgment is reversed and the cause remanded with directions to quiet title to the eighty acres in dispute in the defendant Eva Marr.