Joshua SIMON and Jeremy Simon, by their next friend, Karin SIMON, individually, Plaintiffs-Appellants and Cross-Appellees,

v.

James R. PETTIT and Robert O. Soleway, Defendants-Appellees and Cross-Appellants.

No. 79CA0883.

Colorado Court of Appeals, Div. II.

April 22, 1982.

Rehearing Denied May 20, 1982.

Certiorari Granted Sept. 20, 1982.

Peter Alan Shelley, Peter N. Simon, Boulder, for plaintiffs-appellants and cross-appellees.

White & Steele, P. C., John E. Clough, Denver, for defendants-appellees and cross-appellants.

SILVERSTEIN,* Judge.

Defendants are the owners of a tract of land in the City of Boulder, Colorado. Plaintiffs brought this action seeking a declaratory judgment that two footpaths crossing defendants' land are highways pursuant to § 43–2–201(1)(c) C.R.S.1973. Plaintiffs also sought an injunction to prevent defendants from building a multi-family dwelling on the premises. The trial court entered a judgment declaring the footpaths to be public highways. The judgment also contained a provision allowing the defendants to change the course of the paths along specified routes on the perimeter of the property, and the court then denied the injunction.

Plaintiffs appeal those parts of the judgment which changed the course of the paths, and which denied the injunction. Defendants appeal that part of the judgment which declared the pathways to be public highways. We reverse and remand the cause with directions.

---

\* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions

DEFENDANTS' CROSS-APPEAL

Section 43–2–201(1)(c), C.R.S.1973 provides:

"(1) The following are declared to be public highways: ....

....

"(c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years."

Defendants assert that the trial court erred (1) in holding that "roads" as used in the statute includes footpaths, and (2) in determining that the adverse use as required by the statute had been proven.

## I.

Prior to trial, the trial court ruled as a matter of law that "highways" and "roads" as used in the statute include footpaths. We agree. In *Hale v. Sullivan,* 146 Colo. 512, 362 P.2d 402 (1961), the Supreme Court adopted the definition of "road" as set forth in *Webster's New Practical Dictionary* 1957 (3d ed.), to wit: "1. a highway. 2. a path; way;" and held: "The word road ... may be said to include 'overland ways of every character.'" This is in accord with the general rule. *Black's Law Dictionary* 862 (4th ed. 1968) defines "highway" as "[T]he generic name for all kinds of public ways, whether carriage-ways, ... footways ...." *See, e.g., Levy v. Kimball,* 50 Haw. 497, 443 P.2d 142 (1968) (holding that the 18-inch wide top of a sea wall, used as a path by pedestrians, was a road and constituted a public easement).

## II.

Trial was held to an advisory jury, following which the jury was given a special verdict form containing several specific questions relative to each of the paths. Based on conflicting evidence, the jury found as to both of the paths that: The

of the *Colo.Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.).

paths were used by the public for 20 consecutive years prior to the bringing of this action; the use was actual, visual, and hostile, and under a claim of right. The jury also found that the use was with the implied permission of the owners, and that such permission was indicated by silent acquiescence.

The trial court made no finding as to whether the use was adverse or permissible, but apparently concluded that the jury findings constituted a finding that the paths were public easements and proceeded on the basis of that assumption. The conclusion is unwarranted.

It is undisputed that defendants' land is vacant, unfenced, and unimproved, and that the main path effectively prevents the owners from putting the land to any beneficial use. The second path cuts across the southern part of the land, and has the same effect on other land uses. The land lies in a generally developed residential part of Boulder. The paths were used primarily by children on their way to and from school.

The defendants contend that the use was permissive, whereas the plaintiffs assert it was adverse. To establish that the use was adverse plaintiffs rely on the rule, stated most recently in *Mahnke v. Coughenour*, 170 Colo. 61, 458 P.2d 747 (1969) that the public "is aided by a presumption that the character of the use is adverse where such use is shown to have been made for a prescribed period of time." This rule was first announced in *Haines v. Marshall*, 67 Colo. 28, 185 P. 651 (1919), which involved the right to store water in a reservoir. However, the issue of permissive use was not raised in that case nor in a number of cases which through the years followed the *Haines* rule. *See Trueblood v. Pierce*, 116 Colo. 221, 179 P.2d 671 (1947); *Lively v. Wick*, 122 Colo. 156, 221 P.2d 374 (1950); *Hodge v. Terrill*, 123 Colo. 196, 228 P.2d 984 (1951); *Marr v. Shrader*, 142 Colo. 106, 349 P.2d 706 (1960); *Rugg v. Jones*, 157 Colo. 526, 403 P.2d 770 (1965); *Riggs v. McMurtry*, 157 Colo. 33, 400 P.2d 916 (1965); *Haney v. Olson*, 470 P.2d 933 (Colo.App.1970) (not selected for official publication); *Lar-son v. Rouse*, 485 P.2d 905 (Colo.App.1971) (not selected for official publication). Nor was that issue raised in *Shively v. Board of County Commissioners*, 159 Colo. 353, 411 P.2d 782 (1966), also relied on by plaintiffs. Also, in all of the above cases except *Mahnke* and *Shively*, the land involved was fenced, occupied, or improved.

In the following cases in which the rule was set forth, and the claim of permissive use was raised, the land involved was also enclosed, occupied, or improved, namely *Martino v. Fleenor*, 148 Colo. 136, 365 P.2d 247 (1961), and *Haaren v. More*, 525 P.2d 475 (Colo.App.1974) (not selected for official publication).

■ Since the land involved is vacant, unenclosed, and unoccupied, we conclude that the presumption stated in these cases is not applicable here. *Lieber v. People*, 33 Colo. 493, 81 P. 270 (1905), in construing this section of the statute, held:

"[The] mere proof of the use of land of this character (unimproved prairie land) for a long period of time by individuals, or even by the public generally, for the purpose of travel, without objection from the owner and without evidence from which an intent to dedicate might be inferred, is not sufficient to give a route so taken, the character of a public highway."

In so holding, the court cited *O'Connell v. Chicago T. T. R.*, 184 Ill. 308, 56 N.E. 355 (1900), which stated:

"[W]here the land is vacant and unoccupied and remains free to public use and travel until circumstances induce the owner to enclose it, the mere travel across it, without objection from the owners, does not enable the public to acquire a public road or highway over the same. Such use by the public of vacant and unoccupied land by travel over it, even after the period of twenty years, is regarded merely as a permissive use. Such user continues to be regarded as being by permission of the owner until he does some act, or suffers some act to be done,

by way of asserting his ownership over the land thus used. In other words, there must be something more than mere travel over unenclosed lands by the public, in order to establish a public highway over the same by prescription."

See People ex rel. Mayer v. San Luis Valley Land & Cattle Co., 90 Colo. 23, 5 P.2d 873 (1931).

The basis for this rule was succinctly stated in Boullioun v. Constantine, 186 Ark. 625, 54 S.W.2d 986 (1932), thus:

"During all this time, as well as now, the lands were uninclosed, and we do not think it was the duty of the owner, in order to preserve his title intact, to be continuously on his guard or to forbid his neighbors from using the property for their convenience."

. . . .

"[T]he rule that the use of uninclosed lands for passage is to be presumed to be permissive and not adverse is stated to be that supported by the weight of authority based on the fact that it is not the custom in this country, or the habit of the people, to object to persons enjoying such privilege until there is a desire to inclose. Were the rule otherwise, there would be but few vacant lots in our cities and towns and uninclosed property in the country which might not be burdened by easements of passageways, as it is a matter of common knowledge that by the indulgence and good nature of the owners people are allowed to go across these uninclosed properties at will and until such time as the owners may desire to inclose them."

This rule has been followed in other jurisdictions: Clarke v. Clarke, 133 Cal. 667, 66 P. 10 (1901); Plaza v. Flak, 7 N.J. 215, 81 A.2d 137 (1951); Todd v. Sterling, 45 Wash.2d 40, 273 P.2d 245 (1954).

In Waller v. Hildebrecht, 295 Ill. 116, 128 N.E. 807 (1920), it was stated:

"It is a matter of common observation that the public makes use of any open, uninclosed space which affords a more convenient way of reaching any given place than the regular way would, and it would be contrary to, established legal principles, and to natural justice as well, to allow the public, under such circumstance and by the mere acquiescence of the owner, to acquire the permanent right of way."

"[A]n antagonistic or adverse use of a way cannot spring from a permissive use." Horne v. Hopper, 72 Colo. 434, 211 P. 665 (1922).

Plaintiff's reliance on Boulder Medical Arts, Inc. v. Waldron, 31 Colo.App. 215, 500 P.2d 170 (1972), is also misplaced. There the landowner evidenced an intent to dedicate the alley to public use by placing a fence between the alley and the rest of his land. No evidence of such an intent is present here.

■ Since the use was permissive and not adverse, no public highway or road was established. Therefore, the judgment must be reversed.

## PLAINTIFFS' APPEAL

Our holding on the cross-appeal renders plaintiffs' appeal moot.

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss the complaint.

VAN CISE and STERNBERG, JJ., concur.