Charles L. DURBIN and Mary Jo
Durbin, Plaintiffs-Appellees,

v.

BONANZA CORPORATION, a Colorado
corporation, and Marvin D. Hastings,
Personal Representative of the Estate
of Max D. Hastings, a/k/a Max Deo
Hastings, Defendants-Appellants.

No. 82CA1278.

Colorado Court of Appeals,
Div. II.

Feb. 27, 1986.

Stauffer, Otto & Davidson, John G. Otto, Colorado Springs, for plaintiffs-appellees.

The Law Offices of Donald E. La Mora, Donald E. La Mora, Colorado Springs, for defendants-appellants.

BABCOCK, Judge.

Defendants, Bonanza Corporation and Marvin D. Hastings, personal representative of the estate of Max D. Hastings (Bonanza), appeal from the judgment of the trial court which determined a disputed boundary between contiguous tracts of land owned by Bonanza and plaintiffs, Charles L. and Mary Jo Durbin (the Durbins), and which awarded the Durbins a prescriptive easement over the Bonanza tract. Bonanza contends that the trial court erred procedurally in its determination of the disputed boundary and erred in its determination that Bonanza had failed to overcome a presumption of adverse use. We affirm.

The Durbins acquired their property in 1979. A predecessor in title was John Chancellor. He owned property contiguous to the Durbins' south boundary and contiguous to a portion of Bonanza's east boundary. Chancellor purchased both tracts in 1958 and had lived in the immediate area since 1934. Bonanza acquired its property in 1975 from a stranger to the Durbins' chain of title.

After the Durbins purchased their property in 1979, they began erecting a fence along what they claimed to be the west boundary of their tract. Bonanza objected, claiming that the fence was being built inside the eastern boundary of its property. Bonanza thereafter blocked the Durbins' access to their residence over a road which Chancellor testified had been in continual use for 70 years.

The Durbins brought suit seeking a determination of the disputed boundary pursuant to § 38-44-101, C.R.S., et seq. (1982 Repl. Vol. 16A). They also sought an adjudication of a prescriptive easement for ingress to and egress from their property over the road in question. Bonanza's answer denied the existence of the prescriptive easement. It also sought determination of the disputed boundary pursuant to the statute.

Thereafter, the Durbins filed a motion to appoint an expert pursuant to CRE 706. On June 2, 1981, the Durbins' attorney appeared before the trial court and represented that counsel for Bonanza had no objection to the appointment of Les Nichols as an expert to survey the disputed boundary. The trial court then entered an order appointing Nichols as its expert for this purpose. The order, a copy of which was mailed to Bonanza's attorney, provided that unless written objection was made on or before June 10, 1981, Nichols would be deemed appointed as the court's expert for

the survey. No such objection was filed. The order also specified that the cost of the survey would be shared equally between the parties.

On September 29, 1981, the trial court, by telephone, set a pretrial conference for December 3, 1981. Notice of the setting was also given to the parties by mail. Nichols filed with the trial court his survey and report of his evaluation of the disputed boundary on November 18, 1981.

Counsel for the Durbins and the surveyor appeared at the December 3 pretrial conference, but Bonanza's attorney failed to appear. Counsel for the Durbins represented that the parties had stipulated that the surveyor's report was to be adopted and approved by the trial court to determine the disputed boundary. On this representation, the trial court, in its pretrial order, provided that "pursuant to [C.R.C.P. 53] the report of Les Nichols is accepted by the court as being the findings and conclusions rendered by a 'Master,' which findings the court does approve." The court ordered that the cost of the survey be borne equally by the parties, and it provided that Bonanza would have fifteen days from December 7, 1981, in which to object to its rulings "with regard to the Master's findings and conclusions." A copy of the pre-trial order was mailed to defense counsel, but Bonanza made no objection.

At the later trial on the prescriptive easement issue, counsel, the court, and witnesses referred at times to the Nichols survey and report. It, in effect, swung the common boundary between the parties from the undisputed southwestern common corner 67 feet westerly to the newly determined northwestern common corner. At one point Mr. Durbin testified that the Nichols report resolved the boundary dispute. In this regard, the trial court stated on the record, "I conferred with counsel at the bench and you gentlemen informed me that this was the case." Bonanza's attorney replied, "That's right."

In its judgment, the trial court found that "neither party has contested the findings and conclusions of the Master which

resolved the dispute as to the boundary line." The trial court found that the road in question had been used continuously for access to the Durbin residence since the 1930's until it was blocked by Bonanza in May 1980. It further found that there was no evidence as to who constructed the roadway, of any agreement concerning its use, or of permission given by any landowners for its use. The trial court concluded that Bonanza had failed to overcome a presumption of adverse use and entered judgment declaring that the Durbins have an easement for ingress to and egress from their property over the road in question. Bonanza secured new counsel and this appeal followed.

I.

Bonanza contends that the procedure specified in § 38–44–101, et seq., C.R.S. (1982 Repl. Vol. 16A) is the exclusive means for establishing a disputed boundary. Thus, Bonanza argues that the trial court erred in appointing a surveyor as an expert witness pursuant to CRE 706, in treating his report as that of a Master pursuant to C.R.C.P. 53, and in approving the report because it was not prepared in compliance with the provisions of C.R.C.P. 53 and it was approved without hearing. Under the circumstances of this case we find no reversible error.

 The establishment of a disputed boundary pursuant to § 38–44–101, et seq., C.R.S. (1982 Repl. Vol. 16A) is a special statutory proceeding. *See Gaines v. City of Sterling,* 140 Colo. 63, 342 P.2d 651 (1959). Consequently, the provisions of the rules of civil procedure do not apply insofar as they conflict with the procedure and practice provided by the statute. C.R.C.P. 81; *see Hithe v. Nelson,* 172 Colo. 179, 471 P.2d 596 (1970); *People in Interest of S.S.T.,* 38 Colo.App. 110, 553 P.2d 82 (1976). Nevertheless, a boundary dispute may be resolved under other appropriate statutory or common law proceedings. *See Canady v. Shelden,* 683 P.2d 1205 (Colo.App.1983).

▮▮▮ Here, the parties, by the complaint, answer, and counterclaim, elected to invoke the provisions of the statute to resolve the disputed boundary. Utilization of an expert properly appointed by the trial court pursuant to CRE 706 is not necessarily inconsistent with the hearing procedure provided by § 38–44–108, C.R.S. (1982 Repl.Vol. 16A). However, the procedure prescribed by C.R.C.P. 53 conflicts with that provided under the act. Hence, when an action is brought under the act, the trial court errs in proceeding with a Master pursuant to C.R.C.P. 53. *See People in Interest of S.S.T., supra.*

Under the circumstances of this case, however, procedural irregularities attendant to the application of the statute, CRE 706, and C.R.C.P. 53 do not constitute reversible error.

▮▮▮ First, Bonanza is bound by its stipulation that Nichols' report be adopted and approved by the trial court to establish the disputed boundary. Stipulations are a form of judicial admission which are binding on the party who makes them and may constitute the basis for a judgment. *Kempter v. Hurd,* 713 P.2d 1274 (Colo. 1986); *Northwestern National Casualty Co. v. State,* 682 P.2d 486 (Colo.App.1983). A party may stipulate away valuable rights provided it is not in violation of public policy. *Kempter v. Hurd, supra.*

▮▮▮ Although oral stipulations made out of court will not generally be enforced, *Mogote-Northeastern Consolidated Ditch Co. v. Gallegos,* 69 Colo. 221, 193 P. 670 (1920); *see Kempter v. Hurd, supra,* (oral stipulation made in court is enforceable), a representation, not disputed, concerning an understanding between counsel for the parties ought to be regarded as of equal force to a written stipulation. *See Tanquary v. People,* 25 Colo.App. 531, 139 P. 1118 (1914). And, when the parties deal at arms length and are represented by counsel who agree to the entry of judgment, and there is no fraud on the attorney's part or dereliction of duty inimical to the best interests of the parties, a judgment entered pursuant to their stipulation is a stipulated judg-

ment. *In re Marriage of George,* 650 P.2d 1353 (Colo.App.1982).

▮▮▮ Here, there is no allegation that the parties were not dealing at arms length during the proceedings before the trial court, and both parties were represented by counsel. There is no allegation of fraud, of any professional dereliction of duty, or of abrogation of any rule of public policy. Moreover, there was neither dispute as to the existence of the stipulation nor objection to the surveyor's report until present counsel for Bonanza appeared and filed an amended motion for new trial. Furthermore, counsels' representations in court during the trial of the prescriptive easement issue, together with Bonanza's payment of one-half of the surveyor's fee, is conduct consistent with the stipulation upon which the Durbins have relied.

Consequently, we hold that, under the circumstances of this case, the parties stipulated for the entry of judgment establishing the disputed boundary upon final approval of the surveyor's report by the trial court. *See Kopel v. Davie,* 163 Colo. 57, 428 P.2d 712 (1967). We further hold that Bonanza has waived its right to object to the trial court's determination of the disputed boundary, *see Hildebrand v. Olinger,* 689 P.2d 695 (Colo.App.1984); that Bonanza has demonstrated no prejudice resulting from procedural irregularities, *see Gibson v. Neikirk,* 98 Colo. 389, 56 P.2d 487 (1936); and that, since Bonanza has been instrumental in injecting error in the case, it cannot now complain of that error. *See Palmer v. Gleason,* 154 Colo. 145, 389 P.2d 90 (1964).

II.

A.

Bonanza next contends that the trial court erred in determining that the Durbins had established a prescriptive easement in the roadway across its land. Bonanza asserts the United States of America was a record owner during the prescriptive period, and citing *Omaha & Grant Smelting*

*& Refining Co. v. Tabor,* 13 Colo. 41, 21 P. 925 (1889), and *United States v. Osterlund,* 505 F.Supp 165 (D.Colo.1981), it contends that the Durbins may not possess adversely against the government. We find no error.

There was testimony that the federal government owned the Bonanza tract from 1940 to 1958. However, between 1958 and May 1980, a period in excess of eighteen years, use of the road was continual. Thus, in order for Bonanza to prevail on its contention, it was incumbent upon Bonanza to establish ownership in the government beyond 1958 and within the prescriptive period.

In its motion for new trial, Bonanza requested that the trial court notice judicially the records of the El Paso County Clerk and Recorder, which, Bonanza alleged, would establish government ownership of the Bonanza tract until 1969. However, Bonanza neither cited the court to any book and page or any reception number of any recorded instrument upon which it relied, nor did Bonanza tender to the trial court copies in any form of such instruments.

In denying the motion, the trial court declined to take judicial notice of these records. It also determined that the proffered evidence was not newly discovered under C.R.C.P. 59(a)(4) because it was at all times available to Bonanza and easily accessible.

■ Even if we assume that the recitations contained in the records of the county clerk and recorder are proper subject of judicial notice under CRE 201(b), for a court to be required to take judicial notice upon the request of a party, it must, of necessity, be supplied with the specific information that is the subject of the request. CRE 201(d). Otherwise, it is discretionary whether a court takes judicial notice. CRE 201(c). Failure to provide the trial court with copies of the instruments relied upon or any reference to book and page or reception number where they might be found rendered the issue discretionary, and we find no abuse of the court's discretion in refusing Bonanza's request.

■ We also agree with the trial court that there was no showing that the proffered evidence could not have been discovered in the exercise of reasonable diligence before, and produced at, trial. *See Kennedy v. Bailey,* 169 Colo. 43, 453 P.2d 808 (1969). Consequently, we find no abuse of discretion in the trial court's denial of Bonanza's motion for new trial. *See American National Bank v. Christensen,* 28 Colo.App. 501, 476 P.2d 281 (1970).

Accordingly, there being no evidence to the contrary, we hold that the Durbins established continual use of the roadway for the prescriptive period of eighteen years or more.

### B.

Bonanza next asserts that the trial court erred in its application of a presumption of adverse, rather than permissive, use. Again, we disagree.

■ If one constructs a passageway over his own property at his own expense, and thereafter it is utilized by others, the use is presumed to be permissive, and being permissive at its inception, the use continues to be permissive until the use becomes adverse to the knowledge of the owner. *Allen v. First National Bank,* 120 Colo. 275, 208 P.2d 935 (1949). On the other hand, an unexplained use of an easement for the statutory period is presumed to be under a claim of right and is, therefore, adverse. Invocation of the former presumption is limited to a situation in which the owner constructs the passageway as well as uses it. *Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 517 P.2d 862 (1974). And, where the land involved is vacant, unenclosed, and unoccupied, the former, rather than the latter presumption, applies. *Simon v. Pettit,* 651 P.2d 418 (Colo.App.1982), *aff'd,* 687 P.2d 1299 (Colo.1984).

In this case, it was undisputed that the road was in existence long before Bonanza purchased its property. There was no evidence as to who constructed the road.

Rather, use of the roadway for the statutory period is unexplained. Finally, there is evidence of occupation of the Bonanza tract during the prescriptive period.

A judgment of a trial court determining the existence of a prescriptive easement will not be disturbed on review when based on competent evidence in the record. *Gleason v. Phillips,* 172 Colo. 66, 470 P.2d 46 (1970). We conclude that the record here supports the trial court's application of the presumption of adverse use, its conclusion that Bonanza failed to overcome that presumption, and its judgment that the Durbins acquired a prescriptive easement over the roadway for the purpose of ingress to and egress from their property. *See Gleason v. Phillips, supra; Irvin v. Brand,* 690 P.2d 1283 (Colo.App.1984).

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.