BOARD OF COUNTY COMMISSIONERS FOR GARFIELD COUNTY, COLORADO; United States of America, Plaintiffs–Appellants,

v.

W.H.I., INC., a Georgia Corporation; Verne E. Soucie, Sheriff of Garfield County, Colorado; Brown Land & Cattle Company, Inc.; Stewart Title Guaranty Company, Defendants–Appellees,

and

Brown Land & Cattle Company, Inc.; Double Eagle Land & Cattle Company, Inc.; Charles R. Rittenberry, Third–Party–Defendants–Appellees,

Monroe Investment Company, Appellee.

BOARD OF COUNTY COMMISSIONERS FOR GARFIELD COUNTY, COLORADO, Plaintiff–Appellee,

and

United States of America, Plaintiff,

Monroe Investment Company, Third–Party–Plaintiff–Appellant,

v.

W.H.I., INC.; Verne E. Soucie, Sheriff of Garfield County, Colorado, Defendants–Appellees,

and

Double Eagle Land & Cattle Company, Inc.; Charles R. Rittenberry; Brown Land & Cattle Company, Inc., Third–Party–Defendants–Appellees,

and

Stewart Title Guaranty Company, Third–Party–Defendant.

Nos. 92–1070, 92–1082.

United States Court of Appeals, Tenth Circuit.

April 28, 1993.

Rehearing Denied July 6, 1993.

Robert L. Klarquist (Vicki A. O'Meara and Barry M. Hartman, Acting Asst. Attys. Gen., Washington, DC, Michael J. Norton, U.S. Atty., Paula M. Ray, Asst. U.S. Atty., Denver, CO, Jacques B. Gelin, Dept. of Justice, Washington, DC, with him on the briefs), Dept. of Justice, Washington, DC, for federal plaintiffs-appellants.

Geoffrey P. Anderson (Phillip S. Figa of Burns, Figa & Will, P.C., Englewood, CO, and Ronald M. Wilson, Denver, CO, with him on the brief), of Burns, Figa & Will, P.C., Englewood, CO, for defendants-appellees W.H.I., Inc. and Monroe Investment Co.

Before BRORBY, BARRETT and EBEL, Circuit Judges.

BARRETT, Senior Circuit Judge.

The Board of County Commissioners of Garfield County (County) commenced this action in the Garfield County District Court, State of Colorado, seeking declaratory and injunctive relief. At issue is a roadway, which the parties acknowledge is a public road as it reaches from New Castle, Colorado, to Highland Cemetery. The status of this road is contested as it extends from Highland Cemetery northeast to White River National Forest. Over this approximate 5.5 miles, the road segments public lands administered by the Bureau of Land Management (B.L.M.), and also four parcels, privately-owned at the commencement of this action by defendants Leo Payne, Payne Land and Cattle Company, and W.H.I., Inc.

In its Complaint,[1] the County asserted that the public holds a right-of-way established by adverse possession under Colorado law. The County contended:

> The road crosses land owned by the Defendants [and] also crosses public lands owned by the United States which are administered by the United States Department of the Interior, Bureau of Land Management. . . .

> \* \* \* \* \* \*

> The Defendant, the United States of America owns and controls all property crossed by the road that is the subject of this case . . . to the extent that such road does not cross lands owned by the previously enumerated Defendants.

> \* \* \* \* \* \*

> As both a property owner, whose land is crossed by the subject road and is [sic] a property owner whose land is accessed by the subject road, the United States of America may claim an interest in the subject matter of this litigation that must be asserted through this case.

> \* \* \* \* \* \*

> This road has been used by the property owners, the public and for commercial purposes from its construction up to when it was closed by the Defendant and his predecessors with the knowledge of the landowners.

(R., App. to Brief for the United States, pp. 2–3).

In its Answer, the United States admitted the above-mentioned allegations of the County. It also asserted the following cross-claim against the private landowner defendants:

> The Road provides essential, necessary and unique access to land owned by Defendant United States which is managed by

1. The County named as defendants the United States, Leo Payne, Payne Land and Cattle Company, W.H.I., Inc., and Verne E. Soucie, the Sheriff of Garfield County. Following trial, Monroe Investment Company obtained from Leo Payne parcels of real property crossed by the disputed road. On appeal, W.H.I., Inc. is joined in its brief by Leo Payne, as cross-appellant, and by Monroe Investment Company. Payne Land & Cattle Company withdrew its appearance from and Verne Soucie takes no position in the consolidated appeals.

the United States Department of Agriculture, Forest Service, and by the United States Department of Interior, Bureau of Land Management.

The road provides the citizens of the United States and others with an essential, necessary, and unique access to lands owned by Defendant United States including but not limited to the White River National Forest and other land owned and controlled by Defendant United States.

(R., App. to Brief for the United States, p. 54).

Thereafter, because its ultimate interest paralleled that of the County, the United States removed this case to federal district court where it was realigned as a party-plaintiff.

Defendant Payne Land and Cattle Company denied that the district court had jurisdiction to adjudicate the United States' cross-claim and asserted that the case had been wrongfully removed. As a defense, this defendant alleged that the United States had improperly perfected the existence of and its interest in the subject road. Further, it asserted that "[t]he road is not necessary for access to any land owned by the United States," and, as such, "the United States has no standing to assert its cross-claim in this case." In its pretrial order, the district court acknowledged that the defendants believed the court lacked jurisdiction and wished to preserve the issue for possible appeal. The court, having denied the defendants' motions challenging jurisdiction, ruled that it had jurisdiction over the parties and subject matter in this action.

At trial, the County and the United States (collectively, the governments) sought a declaration that the road is a public highway[2] and an order restraining the private landowners from altering, destroying, or further obstructing the road. At the close of the governments' case, the district court granted the landowners' motion for dismissal pursuant to Fed.R.Civ.P. 41(b) on the ground that plaintiffs failed to show a right to relief. Both the County and the United States filed

Notices of Appeal. Before briefing, however, the County withdrew its appeal, leaving the United States as the sole appellant.

## I.

■ We first address whether the United States is properly before this court on appeal. During oral argument, the standing of the United States to proceed with its appeal was raised. The issue concerned which governmental entity would be responsible for enforcing a ruling declaring this a public roadway, particularly when the County, by withdrawing its appeal, had apparently acquiesced in the district court's declaration that this is not a county road.

■ Standing may be raised at any time in the judicial process. *Juidice v. Vail*, 430 U.S. 327, 331, 97 S.Ct. 1211, 1215, 51 L.Ed.2d 376 (1977); *Citizens Concerned for Separation of Church and State v. City and County of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981). "We review de novo issues such as standing that are prerequisites to this court's jurisdiction." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehab. Servs.*, 958 F.2d 1018, 1021 (10th Cir.1992). Jurisdictional questions are of primary concern and can be raised at any time by courts on their own motion. *Citizens*, 628 F.2d at 1297. *See also McGrath v. Kristensen*, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173 (1950).

■ In *ANR Pipeline Co. v. Corporation Com'n*, 860 F.2d 1571, 1579 (10th Cir.1988), *cert. denied*, 490 U.S. 1051, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989), we stated that standing is analyzed with two inquiries: "(a) whether the plaintiff alleges that the challenged action has caused him injury in fact (economic or otherwise), and (b) whether the interest sought to be protected by the plaintiff is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See also Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152–53, 90

---

**2.** Under Colo.Rev.Stat. § 43–2–201(1)(c) (1984), "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years" are declared to be public highways.

S.Ct. 827, 829, 25 L.Ed.2d 184 (1970); *Citizens*, 628 F.2d at 1295. While the term "standing" subsumes a blend of constitutional requirements and prudential considerations, Article III of the United States Constitution requires that a party which invokes the court's authority show that it has personally suffered some actual or threatened injury as a result of putatively illegal conduct of the defendant and that the injury can be fairly traced to the challenged action and is likely to be redressed by a favorable decision. *Franchise Tax Bd. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868 (10th Cir.1992); *Riggs v. City of Albuquerque*, 916 F.2d 582 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1623, 113 L.Ed.2d 720 (1991). Whether a plaintiff has standing to bring a cause of action is a question of law for the court to determine. *Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380, 389 (10th Cir.1985).

The United States points to *Simon v. Pettit*, 651 P.2d 418 (Colo.Ct.App.1982), *aff'd*, 687 P.2d 1299 (Colo.1984), in support of its contention that it has standing to appeal. In *Simon*, the plaintiffs-appellants sought a declaration that two footpaths used by them, each 18 inches wide with definite and specific lines, which crossed over the defendants'-appellees' lands, were public highways by virtue of adverse possession under § 43–2–201(1)(c), *supra* note 2. The jury found that the footpaths had been used by the public for twenty consecutive years and that the use was actual, visual, hostile, and with the implied permission of the owners as evidenced by their silent acquiescence. The Colorado Court of Appeals reversed the district court's judgment which declared the footpaths public highways, ruling that inasmuch as the land involved was vacant, unenclosed, and unoccupied, the presumption that the use was adverse did not apply. While the court did agree that the definitions of "road" and "highway" were broad enough to include footpaths, it found this particular use was permissive.

The Colorado Supreme Court, reaffirming an earlier decision "that the scope to be given the word ["road"] depends upon the context in which it appears," *see Hale v. Sullivan*, 146 Colo. 512, 362 P.2d 402 (1961), indicated that it did "not believe that the legislature intended an eighteen-inch footpath in a populated, residential, urban area to be considered a 'road' so as to permit it to be declared a public highway." *Simon*, 687 P.2d at 1302. Significantly, the court "recognize[d] that section 43–2–201(1)(c) does not require the city to expend funds or otherwise demonstrate its willingness to accept highways established by prescription." *Id.* at 1303. Nonetheless, the court observed that "... evidence that the city had maintained the footpaths or included them on a map of the city's street system would be a strong indication that the paths had acquired status as public highways." *Id.* (footnote omitted).

Although nothing in the *Simon* opinions specifically addressed standing, the Colorado courts obviously were of the view that the plaintiffs, as users, had established a sufficient "personal stake" to render them effective litigants inasmuch as they had demonstrated that they would suffer an "injury in fact" if precluded from using the footpaths in the future.

By analogy, we hold that in this case the United States has adequately demonstrated that it, its agents, lessees and public users of the White River National Forest will continue to suffer an injury in fact which may be redressed by a favorable court decision. Here, the United States pleaded that: (1) it "owns and controls all property crossed by the road that is the subject of this case ... to the extent that such road does not cross lands owned by the previously enumerated Defendants;" (2) "[t]he road provides the citizens of the United States and others with an essential, necessary, and unique access to lands owned by [the] United States including but not limited to the White River National Forest;" and (3) "as both a property owner, whose land is crossed by the subject road and is [sic] a property owner whose land is accessed by the subject road, the United States of America may claim an interest in the subject matter of this litigation that must be asserted through this case." The district

court indicated that, "concerning this road, which does cross federal land, they [the United States] do have an interest. [T]he interest does not have to be fee simple title. It can be an interest in the nature of an easement." (R., Vol. I, Tab 36, p. 29).

The United States, as a user of this roadway which crosses and accesses its property, suffers injury which is traceable to the roadway's obstruction and which may be redressed by a decision declaring this a public highway. We hold that the United States, a proper party-plaintiff in the district court, has standing to bring this appeal challenging the district court's ruling.

During oral argument, the issue arose concerning whether the roadway's blockage and continued obstruction from 1960 to date served to bar an adverse possession claim, based on the doctrine of laches. We have held that a state's statute of limitations does not apply "to an action brought by the federal government to vindicate public rights or public interests, absent a clear showing of contrary congressional intent." *Marshall v. Intermountain Elec. Co.,* 614 F.2d 260, 262 (10th Cir.1980). *See also United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *Chesapeake & Delaware Canal Co. v. United States,* 250 U.S. 123, 125–27, 39 S.Ct. 407, 407–08, 63 L.Ed. 889 (1919). "[A]s to its governmental function, the doctrine of laches does not apply to the United States...." *Thompson v. United States,* 312 F.2d 516 (10th Cir.1962), *cert. denied,* 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963). We hold that the parties and issues are properly before us on appeal.

## II.

■ Turning to the merits, we must determine the sole substantive issue presented on appeal: whether a public right-of-way was established by adverse possession over the four privately-owned parcels.

In 1929, citizens of Garfield County petitioned the Board of County Commissioners requesting that the Board "cause to be laid out and opened a County road" from "the cemetery generally north to the White River National Forest." The petition stated that "we, the owners of the land through which

said road is sought to be laid out ... hereby agree to give the right of way through our lands as shown by the plat accompanying this petition, and relinquish all claims for damage by reason thereof." The second page of the petition, upon which the course of the road was to be depicted, was not completed.

Pursuant to the petition, the Board passed a resolution declaring the road a public highway, the width extending twenty feet on either side of an unknown center line. No objections to this declaration were lodged by the landowners. Thereafter, the Board enacted a second resolution ratifying its earlier declaration that the road be considered a public highway.

In 1959, Buster Brown, who then owned the four parcels in question, requested that the Board abandon the road. The Board unanimously determined that the county road would not be abandoned. Notwithstanding this, in 1960 Brown blocked the road by erecting a gate just north of the cemetery. Since that time, public use of the road has remained obstructed by the owners of the four parcels.

Under Colorado law, public highways include "[a]ll roads over private lands that have been used adversely without interruption or objection on the part of the owners of such land for twenty consecutive years." Colo. Rev.Stat. § 43–2–201(1)(c) (1984). Though the testimony presented by the government was minimal, one witness, Mr. Edward Jordan, did indicate that the "people used it [the road]. The potato cellars were up that road." (R., Vol. VI, p. 203). He also testified that he and others used the road for hiking, to collect mistletoe, hunt grouse, and fish. *Id.* at pp. 194–95, 197. One additional government witness, Rex Wells, a BLM employee, testified over objection by defendants-appellees that this road was historically constructed for use as a logging road. (R., Vol. IV, p. 30). Though sparse, the record does contain evidence that this roadway was used from the time it was constructed through the date of its obstruction.

We now address whether the use of this roadway was adverse to the landowners. The landowners argue that, because the land

was vacant, unenclosed, and unimproved, use in this case was permissive. *See, e.g., Simon,* 651 P.2d at 420 ("use by the public of vacant and unoccupied land by travel over it, even after the period of twenty years, is regarded merely as a permissive use"); *Durbin v. Bonanza Corp.,* 716 P.2d 1124, 1129 (Colo.Ct. App.1986) (where land involved is vacant, unenclosed, and unoccupied, use is presumedly permissive). The landowners rely on the district court's oral findings of fact and conclusions of law wherein the court stated that "from the testimony it's uncontradicted that permission was in fact implicit for the people in the community to cross over properties and for that matter to take things ... from the land that they made no claim of owning." In our view, the testimony of Mr. Jordan does not support the district court's finding of permissive use.

The United States argues that use of a right-of-way which begins as permissive will continue as such only until the user gives the landowner notice or explicit disclaimer that the user is claiming an exclusive legal right and is possessing in an adverse or hostile manner. *See Lovejoy v. School District No. 46,* 129 Colo. 306, 269 P.2d 1067, 1069 (1954); *Segelke v. Atkins,* 144 Colo. 558, 357 P.2d 636, 638 (1960). Permissive use continues until the user "does some act, or suffers some act to be done, by way of asserting his ownership over the land thus used. In other words, there must be something more than mere travel over unenclosed lands by the public, in order to establish a public highway over the same by prescription." *Simon,* 651 P.2d at 420–41 (citing *People ex rel. Mayer v. San Luis Valley Land & Cattle Co.,* 90 Colo. 23, 5 P.2d 873 (1931)). The United States asserts that the Board's 1929 resolutions provide the requisite notice that the public was openly and notoriously claiming the road as a public right-of-way. We agree and hold that the twenty-year period for establishing adverse possession began to run no later than the date the County enacted its 1929 resolutions declaring its intention to openly and

notoriously claim the road as a public right-of-way.

■ While the district court found that the 1929 resolutions had not been properly recorded,[3] the United States asserts that, despite the defects, the resolutions can be relied upon to show notice in furtherance of an adverse possession claim. We agree. We view the district court's discussion of improper recording inapplicable in determining adverse possession. Section 43–2–201(1)(c) does not require that public use be based on color of title or properly recorded resolutions. The 1929 resolutions serve only to illustrate notice of adverse, open, and notorious use by the public. Further, Brown's attempt to have the road declared abandoned in 1959 demonstrates awareness of the public's ownership claim.

Moreover, the record does not contain any evidence that the private land crossed by the road in question was, during the requisite twenty years, vacant, unenclosed and unoccupied. Mr. Jordan testified that he observed: a landowner irrigating, a sheepherder, and an individual who homesteaded in the area. (R., Vol. VI, p. 199). There was also a cabin which was homesteaded by a man who operated a sawmill in the area, though this individual apparently died sometime before 1929. *Id.* at p. 196. Additionally, Mr. Jordan indicated that "[t]here might have been fences, but they weren't important to me." *Id.* at p. 197. He recalled seeing people on the road "right over the fence irrigating." *Id.* at p. 207. Therefore, "the public 'is aided by a presumption that the character of the use is adverse where such use is shown to have been made for a prescribed period of time.'" *Simon,* 651 P.2d at 420 (citing *Mahnke v. Coughenour,* 170 Colo. 61, 458 P.2d 747 (1969)).

■ Finally, the landowners assert that under Colorado law, "[a] right of way for a public road ... must be confined to a reasonably definite and certain line." *Sprague v.*

---

**3.** The district court stated: "Likewise, while I agree that substantial compliance with the statute in place by the county commissioners in 1929, statute 1306, would suffice, I fail to see how there has been proof of substantial compliance where the existence vel non of the plat map and legal description is not present ... [I]t's the failure to record properly in the grantor/grantee index, the failure to record and file the plat and map of and legal description or such that the plaintiffs have the problems of proof that they presently have."

*Stead,* 56 Colo. 538, 139 P. 544, 545 (1914).[4] In *Sprague,* the court found that the road in question did not have "reasonable certainty of limits and direction," but the court remanded only to have the district court take additional testimony in order to definitely describe the roadway. *See also Wright v. Horse Creek Ranches,* 659 P.2d 705, 709 (Colo.Ct.App.1982), *aff'd in part, rev'd in part,* 697 P.2d 384 (1985).

According to the landowners, the United States describes the road as crossing Sections 29, 20, 17, 16, 9, 4, and 3.[5] Yet, as indicated on the 1893 plat, the road crosses Sections 20, 17, 16, 9, 10, and 3, a description which omits Section 29 (though the disputed portion of the road commences in this Section), omits Section 4, and adds Section 10. Further, the Garfield County Commissioners' minutes allegedly establish the road as crossing Sections 20, 17, 16, 10, 9, and 3, omitting Sections 4 and 29.

The United States notes that the wagon road depicted in the 1893 plat generally follows the orientation of the present road. However, it acknowledges that the southernmost portions of the wagon road are depicted as further west of the present road and the northernmost portions of the wagon road are located on the plat as further east of the present road.

"It has long been the law that the course of a right of way may be altered without destruction of the right of way. That may be by mutual consent, evidenced by acquiescence, or it may be the result of changes resultant from natural causes." *Wilkenson v. Department of Interior,* 634 F.Supp. 1265, 1275 (D.Colo.1986). Indeed, in this case, the governments presented testimony that any road is subject to changing course. One government witness testified to realignment of the road in areas along a creek where the

road had washed out. Furthermore, the landowners, aware of the public's use of the road during the twenty-year period, acquiesced in such use, notwithstanding the fact that the road may have changed course. The governments also presented testimony of a long-time resident who stated that the present location of the right-of-way accords with its historic location.

In 1910, the County approved a proposal to contribute funds for the construction of a "proposed new road" from Highland Cemetery north across Sections 29 and 20 to a point of intersection with the old road. It is the purported relocation of the road in 1910 to which the district court apparently referred when it expressed uncertainty as to the road's location "when there is the change of road in 1910." However, the question of whether the right-of-way may have substantially shifted location in 1910 is irrelevant in this appeal. We hold that from 1929 onward, the right-of-way was confined to a *reasonably* definite and certain line.

We observe that the United States Forest Service has completed a survey of the present roadway which is only accurate to plus or minus five meters (16.4 feet). The government's surveyor testified that this survey is not the most accurate manner by which to locate a road. (R., Vol. IV, p. 92). If, upon retrial, it is determined that the subject roadway is a public road, the United States should be directed, at its own cost, to undertake an accurate and qualified survey of the roadway limited to its actual use and prepare a plat for filing therewith.

We REVERSE the district court's finding/conclusion that the evidence is uncontradicted that the public use of the roadway was permissive rather than adverse, and RE-

---

**4.** The landowners rely on the following language from the district court to support their contention that no reasonably certain line was referenced: "I have no idea where the road claimed may have been, nor for that matter whether there is a compliance when there is the change of road in 1910. That it stayed within substantially the same line."

**5.** The Board's resolution describes the road as follows:

Said road is described as beginning at the North limits of the Town of New Castle, in Garfield County, and following the present road from the Town of New Castle north to the Cemetery; and thence continuing from the end of this road at or near the Cemetery in a general northerly direction, through Sections 20, 17, 16, 19, 9 and 3 ... to the boundary of the White River National Forest.

MAND for a full evidentiary hearing on that issue and all other matters relevant thereto.

**REVERSED and REMANDED.**